## WESTERN INDEMNITY CO. v. SHANNON et· al. (No. 2572.)

(Court of Civil Appeals of Texas. Texarkana. May 24, 1922. Rehearing Denied June 15, 1922.)

Master and servant ⬅➡367—Workman sur-facing floors with own machine held an in-dependent contractor and not an "employé" within Compensation Act.

A carpenter injured while surfacing floors with his own machine under a contract with a building contractor, who had no control over the work except to accept or reject it, *held* an independent contractor and not an "em-ployé" within Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—91) art. 5246—82, defining an "employé" as one in the service of an-other under a contract of hire, though he was on the pay roll for labor and was subject to discharge.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Em-ployé.]

Appeal from District Court, Grayson Coun-ty; Silas Hare, Judge.

Proceeding by Lelia B. Shannon and an-other against the Western Indemnity Com-pany before the Industrial Accident Board for an award. After an award of compen-sation, defendant sued in the district court to set aside the award, and from a judgment for plaintiffs, defendant appeals. Reversed and rendered in part, and affirmed in part.

In 1920 T. J. Shannon was employed by the Lyon Planing Mill as a carpenter. The mill paid him $7 a day for his work. Shan-non owned a machine for use in surfacing or polishing floors. He kept the machine at his residence, and did not let it for use by oth-ers, but when it was used operated it him-self, charging $2.50 an hour for his services when using it. A particular kind of paper for polishing, kept in stock by the planing mill, was used in operating the machine. By the terms of Shannon's contract with the mill company, he had a right to suspend work he was doing for it when he had an opportunity to work elsewhere with the ma-chine. The mill paid him nothing during the time he worked with the machine, and he paid one Pennington, the superintendent or manager of the mill, $1 an hour for the number of hours he worked with the ma-chine for paper used in operating it and for release from his duties at the mill while he was operating it. Appellee J. A. Simmons, a general contractor, was engaged in repairing a building used by a bank in Sherman. The work included surfacing or polishing certain floors in the building. A month or six weeks before the floors were ready to be polished Simmons saw Shannon at Dr. Neatherly's,

where he was using the machine, and told him "about the job at the bank." Shannon then told Simmons he would do the work, and requested him when he wanted it done "to call the Lyon Planing Mill and he would get him there." On Tuesday before the Thursday when Simmons expected the floors to be ready for polishing, he called Penning-ton at the planing mill and asked him if he could furnish him "a man to scrape the floors, and he said 'Yes,' or something to that effect." Simmons had another conver-sation with Pennington "just before noon of Thursday," in which Pennington told him "he would have a man there." Shannon was the man who appeared to do the work at the time specified. He worked until about 4 o'clock of the afternoon of the following Saturday, and was on a ladder engaged in disconnecting wires which carried the elec-tricity which furnished the power by which the machine was operated, when he fell from the ladder, and was dead when persons near by got to him. Whether his death was caused by the electricity or the fall, or both, did not appear from the testimony. Shan-non worked 20 hours in surfacing the floor of one of the rooms in the building, and aft-er his death Simmons paid his widow, appel-lee Mrs. Lelia B. Shannon, $50 for the work, $10 of which she paid to Pennington for pa-per used in operating the machine during the 20 hours. Pennington testified he waived the right he had under the contract with Shannon to $10 more than the sum paid him of the $50 Simmons paid Mrs. Shannon. At the time of the accident Simmons was a "subscriber" within the meaning of the Workmen's Compensation Act (chapter 5, tit. 77, Vernon's Stat. 1918 Supp.), and ap-pellant had issued a policy by the terms of which it agreed to pay any sum due or to become due by him "because of any injuries or death and the obligation for compensation therefor imposed upon or accepted by" him under said act. The premiums on the pol-icy were paid by Simmons at the end of each month, and the amount thereof was based on the aggregate of his payroll for labor during the month. Shannon was on the payroll for the month he worked, which was made up after his death, and the amount Simmons paid Mrs. Shannon was included in the ag-gregate thereof on which he paid appellant the premium for that month. The Lyon Planing Mill was also a "subscriber" under said act, and appellee the Associated Em-ployers' Reciprocal had issued it a policy similar to the one issued by appellant to Simmons. It appears from the pleadings in the case that after his death Shannon's wid-ow, appellee Mrs. Lelia B. Shannon, and their minor son filed with the Industrial Ac-cident Board a claim for compensation un-der the act referred to against both appel-

lant and the Associated Employers' Reciprocal; that the Board determined that Shannon was not employed by the Lyon Planing Mill at the time of the accident, but was in the employ of Simmons; that appellant was liable under the act as the insurer of Simmons; that Shannon's average weekly wages was $35; that Mrs. Shannon and her son were entitled to recover of appellant $15 per week for a period of 360 weeks; and that the Board made an award accordingly. This suit was by appellant to set side the award, on the ground that Shannon was not an employé of Simmons at the time of the accident. The trial was to the court without a jury, who found contrary to appellant's contention. The appeal is from a judgment awarding appellees Mrs. Shannon and her son a recovery of $4,719.72 against appellant.

E. C. Gaines, of Austin, and Wood, Jones, & Wood, of Sherman, for appellant.

McReynolds & Hay and Head, Dillard, Smith, Maxey & Head, all of Sherman, for appellees.

WILSON, C. J. (after stating the facts as above). Unless the judgment is wrong because the testimony did not warrant the finding that Shannon was an "employé" of Simmons within the meaning of the Workmen's Compensation Act (chapter 5, tit. 77, Vernon's Statutes, 1918 Supp.) at the time of the accident resulting in his death, we think the assignments in appellant's brief show no reason why it should not be affirmed. Appellant's contention with reference to that question is that the testimony not only failed to show that Shannon was such an employé, but, on the contrary, established as a matter of law that Shannon was an independent contractor at that time.

In the act referred to an "employé" is defined as:

"Every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer." Article 5246—82.

The testimony was sufficient to show that Shannon surfaced the floor under a contract made by him with Simmons in the usual course of the latter's business. Hence he was an "employé" within the meaning of the law if he was in Simmons' service while he was doing the work; that is, if the relation of master and servant existed between him and Simmons. That relation has been said to exist "whenever the employer retains the right to direct and control the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done." 26 Cyc. 966. "The master

test," the authorities say, "is the right to control the work." "Who has the right to direct what shall be done and when and how it shall be done? Who has the right to general control?" Kelley's Dependents v. Hoosac Lumber Co., 20 N. C. C., A. 902; Kinsman v. Hartford Courant Co., Id. 527. If the employer has such right, in a given case, the person who does the work is his employé. If the person who does the work has the right, he is not an employé, but is an "independent contractor."

Simmons testified, and he was the only witness who did testify about the matter, that he had no agreement with Shannon "as to how he would do the work, nor what he would be paid for it, or anything of that kind"; that he (Simmons) "had nothing to do with how the machine was handled," with how Shannon "surfaced the floor," and "no control on how he did the work, except to accept or reject it." Simmons further testified that when Shannon had about completed the surfacing of the floor of one of the rooms he told him "that floor (quoting) would be all that he wanted him to use that machine on, because he could not use it and avoid damaging the paint."

We have found no other testimony in the record pertinent to the question, and we can see no way of escaping the conclusion that the testimony specified established as a matter of law that the relation of Shannon to Simmons was that of an independent contractor, and not that of an employé, within the meaning of the Workmen's Compensation Law.

The cases most relied on by appellees Mrs. Shannon and her son as supporting a contrary view of the testimony are U. S. F. & G. Co. v. Lowry (Tex. Civ. App.) 231 S. W. 818; McNally v. Diamond Mills Paper Co., 223 N. Y. 83, 119 N. E. 242; Tuttle v. Lumber Co., 192 Mich. 385, 158 N. W. 875, Ann. Cas. 1918C, 664; and State v. District Court, 128 Minn. 43, 150 N. W. 211.

In the case first cited the question was whether Lowry, a traveling salesman, was an "employé" of the "subscriber" or not. The court held that a finding that he was was warranted because there was evidence:

"That he was actually controlled by his employer in the performance of his work, at least as to the main features of his employment, such as the soliciting of orders, the prices at which he should sell, and the terms of sale, the allotment of specified territory, and the approval and consummation of his sales by his employers."

"These considerations," the court said, "are decidedly characteristic of the services of an employé, rather than the contract or undertaking of an independent contractor."

The comment of the court on the testimony in the McNally Case shows it was radically different from this one. The court said:

"McNally did not undertake to accomplish a specific job in his own way. He did not undertake to accomplish anything. He undertook to help and to obey."

In the Tuttle Case it appeared the plaintiff's husband was thrown from a load of logs while he was driving the team drawing the logs from a skidway where they were loaded to a mill. The loading and unloading of the logs was done by other employés of the defendant and was under its control, both as to time and place, and it was mainly because of this control, it seems, that the court concluded he was an employé and not an independent contractor.

In the other case specified (State v. District Court) one Bashko was injured while getting out ties, poles, and posts for the Virginia & Rainy Lake Company. The court held that the testimony was sufficient to make an issue for the jury as to whether Bashko was an employé or an independent contractor, saying:

"The evidence tends to show that the company did not surrender, but reserved, the right to supervise and control the work of Bashko, at least to the extent necessary to prevent waste and loss. They required him to cut the timber clean as he went, and to manufacture it according to specifications furnished by them, and also to pile the brush. They inspected his work from time to time and occasionally directed him to remedy defects therein. They had the right to discharge him at any time, and this right afforded adequate means for controlling his work."

The insistence of appellees Mrs. Shannon and her son in the instant case that the judgment was warranted seems to be based, largely, on the concluding remark of the court in the excerpt from the opinion in the Bashko Case and their view that it appeared from the testimony that Simmons had the right, and exercised it, to discharge Shannon before he completed the work of polishing the floors in the building. The only testimony in the record as to that matter is that referred to above, to the effect that Simmons told Shannon, when he had about completed the polishing of the floor of one of the rooms, that he would not want him to polish others. If it should be conceded that that testimony established that Simmons had a right to discharge Shannon before he completed the polishing of the floor of the room he was working on, we think that fact that Simmons had such right would lack probative force when considered as it should be in connection with Simmons' uncontradicted testimony that he had no control over Shannon as to the work, "except to accept or reject it."

As we construe it, the testimony establishes conclusively that Shannon was an independent contractor, and not an "employé," within the meaning of the Workmen's Com-

pensation Law, and we cannot do otherwise than reverse the judgment. And, as it must be reversed on that ground, it follows judgment should be here rendered that appellees Mrs. Shannon and her son take nothing by their suit against appellant. The judgment will be affirmed as far as it is in favor of the Associated Employers' Reciprocal.

On Motion of Appellees for a Rehearing.

We have again gone over the testimony in the record, and, after further careful consideration of same in the light of the motion, are still of the opinion it did not warrant the finding that Shannon was an employé of Simmons within the meaning of the Workmen's Compensation Law. Therefore the motion is overruled.