**SHANNON et al. v. WESTERN INDEMNITY CO. et al.** (No. 484–3879.).

(Commission of Appeals of Texas, Section A. Jan. 23, 1924.)

**I. Master and servant ⊗➡361—"Employé" within Compensation Act, defined.**

Under Workmen's Compensation Act, pt. 4, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82), providing that "employé" shall mean every person in the service of another under contract of hire, the term "employé" includes all those engaged in the service of another, whether in performance of manual labor, or in positions of management or trust, and whether being paid wages or salary, so long as they remain under ultimate control of employer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

**2. Master and servant ⊗➡367—"Independent contractor" defined.**

An independent contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Contractor.]

**3. Master and servant ⊗➡403—Compensation claimant must show himself an employé.**

Burden of proof is on compensation claimant under Workmen's Compensation Act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—1 to 5246—107) to show that at time of injury he was an employé within the act.

**4. Master and servant ⊗➡367—Workman surfacing floor with own machine held an "independent contractor" and not an "employé" within Compensation Act.**

A carpenter owned a floor surfacing machine, furnished all material therefor, did work with it according to his own ideas and methods, with the right to employ necessary help and to choose his own hours for labor, and was compensated on basis other than that of ordinary wages. He was injured while surfacing floors with his machine under contract with a building contractor, whose control was only to accept or reject the work. *Held* that he was an "independent contractor" and not an "employé" within Workmen's Compensation Act, pt. 4, § 1 (Vernon's Ann. Civ. St. Ann. Supp. 1918, art. 5246—82).

Error to Court of Civil Appeals of Sixth Supreme Judicial District.

Proceeding under the Workmen's Compensation Act by Leila B. Shannon and another for the death of T. J. Shannon, claimants, opposed by the Western Indemnity Company, insurer, and another. After award of compensation insurer sued in the district court to set it aside. Judgment for claimants was reversed and rendered by the Court of Civil Appeals (242 S. W. 774), and they bring error. Judgment of Court of Civil Appeals affirmed.

McReynolds & Hay and Head, Dillard, Smith, Maxey & Head, of Sherman, for plaintiffs in error.

E. C. Gaines, of Austin, and Wood, Jones & Wood, of Sherman, for defendants in error.

GERMAN, P. J. There is one question of law to be decided in this case. The material facts are not in dispute. Plaintiffs in error, Leila B. Shannon and Forrest Shannon, are the surviving wife and minor child of T. J. Shannon, deceased. T. J. Shannon was a carpenter, and in November, 1920, was in the employment of the Lyon Planing Mill. He owned a surfacing machine which was used in polishing floors, and which was operated by electricity. Under his contract with the Lyon Planing Mill he had the right to be released from service with the mill and to engage in the work of surfacing floors, or similar work, when he had the opportunity to do so. His wages with the planing mill were $7 per day, and when he was operating the surfacing machine in doing work for others he charged $2.50 per hour. Of this sum he paid one Pennington $1 per hour for paper used in doing the surfacing and for the privilege of being released from employment at the mill. He kept the surfacing machine at his home, and did not let it for use to others. When doing work with it he hauled the machine to and from his home at his own expense. He did most or all of the work with the machine himself, but had the right to employ his own help, if necessary. J. A. Simmons who was a general contractor, had a contract with the American Bank & Trust Company in Sherman, Tex., to remodel and do repairing work on the bank building. Some time prior to beginning this work Simmons spoke to Shannon about doing some surfacing work at the bank and Shannon stated that he would do the work. There was never any contract or agreement between Simmons and Shannon as to what particular work was to be done or what Shannon was to be paid for the work. Simmons merely understood that he was to pay the usual charges for such work. On November 18, 1920, in response to a telephone call made at the planing mill, Shannon went to the bank and began the work of surfacing the directors' room, doing the work in his own way, with no assistants and with no directions or suggestions from any one, except that Simmons pointed out to him the directors' room as the one he wanted surfaced. Simmons testified that he had no agreement with Shannon as to how the work was to be done, or what he was to be paid, and that no one exercised

⊗➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

any control or direction over Shannon as to the means, methods, or manner of doing the work; that he had no control over the work or the method of doing same, except to accept or reject it when completed. The work done by Shannon was accepted by Simmons and the architect. At about the time Shannon completed the work on the directors' room, Simmons told him that was all that he wanted done, and that they would not use the machine on any other rooms. After completing this work while detaching his machine from the electric wires, Shannon was killed, presumably by coming in contact with an electric current. After the death of Shannon, Simmons paid Mrs. Shannon $50 as the amount due for 20 hours of work at $2.50 per hour, and later placed Shannon's name on his payroll for the month of November. At the time of Shannon's death Simmons was a subscriber within the meaning of the Workmen's Compensation Act and had a policy of insurance for the benefit of his employés.

Plaintiffs in error are claiming that at the time Shannon was killed he was an employé of J. A. Simmons and they are thereby entitled to compensation under the indemnity policy. The district court of Grayson county held that he was an employé and gave judgment in favor of plaintiffs in error in a lump sum for the compensation allowed by law. This judgment was reversed and rendered by the Court of Civil Appeals at Texarkana. 242 S. W. 774.

[1] The one question for our determination is, Was Shannon at the time of his death an "employé" of J. A. Simmons in the meaning of the Workmen's Compensation Law? Section 1 of part 4 of said law provides:

"Employé shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written." (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—82.)

We think the term "employé" as used in this act may be said to have a broader and more liberal meaning than the word "servant," as that term has been generally understood, in this, that it was intended to include all those in the service of another whether engaged in the performance of manual labor, or in positions of management and trust, and whether being paid wages or a salary, so long as they remained under the ultimate control of the employer. However, whatever the position occupied by the person employed, he must, in order to come within the provisions of the law, be "in the service of another." This makes it necessary to look beyond the mere language of the statute and to determine the import of the words "in the service of another" in accordance with recognized legal standards and definitions. The authorities seem to be practically in accord in holding that to constitute one an "employé" in the meaning of the compensation laws, there must exist between the parties the relation of master and servant, in the broad sense that the one has the right of ultimate control and direction over the other. When one is employed by another, it may be generally said to be in the relation of servant to master, or as an independent contractor. This being true, the courts in nearly every instance have undertaken to determine the relation of the person employed by another by first deciding whether or not such person was an independent contractor. If he was found not to be such under all the facts and circumstances, then he was classed as a servant or employé of his employer. If, under the facts and circumstances of this case, Shannon is found to be an independent contractor, as tested by the recognized legal rules and standards defining that relation, it follows as a matter of course that he was not an employé of Simmons.

A very able and exhaustive annotation of the authorities bearing upon the question of who is an independent contractor will be found in volume 19, A. L. R., pages 1168 to 1361, and volume 20, pages 684 to 808. We have found this discussion helpful and instructive, and heartily commend it to those who desire to study this subject.

An "employé" has been held to be "one who works for and under the control of his employer." Employers' Indemnity Co. v. Kelly Coal Co., 149 Ky. 712, 149 S. W. 994, 41 L. R. A. (N. S.) 963. In the case of Cunningham v. Railroad Co., 51 Tex. 510, 32 Am. Rep. 632, in discussing the difference between the two relations of master and servant and employer and independent contractor, the court said:

"In the first relation, that of master and servant, the master has the right to direct the conduct of the servant and the mode and manner of doing the work, and hence his corresponding liability for an improper execution of the same. * * * 'He is deemed the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents not merely in the ultimate result of the work, but in all its details.'"

It is said by Street on Personal Injuries, §§ 11, 112:

"No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishment; 'not only what shall be done, but how it shall be done.'"

It is possible there are situations arising under the Compensation Law where these definitions would be regarded as too restrictive, but we are using them by way of demonstrating more clearly the position oc-

cupied by Shannon, which we think was unquestionably that of an independent contractor.

[2] The courts have formulated many definitions of the term "contractor." When analyzed there is but little difference in their substantial meaning. Among the many definitions we think the following is perhaps the most accurate and expressive:

"A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

There are numerous evidential elements which go to determine the quality of a contract as affecting the question of whether one is an independent contractor or not. It is seldom or ever that any one of these elements is decisive of the question. Due to lack of an accurate understanding of these elements, and their relative importance one to the other, courts have often given undue importance and probative value to different circumstances, and the result has been that there are many apparently conflicting opinions. However, the courts of our state have always shown an appreciative understanding of the question, and a careful analysis of the decisions of our state will show but little, if any, conflict. It is true, however, that in some instances the emphasis has been placed upon one evidential circumstance, while in other cases upon another circumstance.

In spite of the many varied expressions contained in the decisions, and the reasons given for different conclusions, it may be safely said that in the last analysis all of the numerous evidential facts or elements with reference to any contract or agreement may be put into two general classes:

(1) Those which have a direct bearing upon the question whether the person employed was free from or subject to the control of the employer with respect to the details of the stipulated work.

(2) Those of a circumstantial description which possess a merely indirect or inferential significance with respect to that question.

From this classification it will be seen that the outstanding quality of any contract, as touching the question of the independence of same, and which is ultimately the one most decisive of the question, is the one of the right of control of the person employed by the employer with respect to the details of the work. All other elements bear some re-

lation to that one, and directly or indirectly indicate the presence or the absence of the right of control. For this reason it has often been said that the supreme test of the relation is the right to control. So it may be stated in a general way that in every contract of employment, this element of right to control being present, the person employed has been held to be an employé or servant, unless all the other circumstances necessarily required a different conclusion; and when this element of control was absent, the person has been held to be a contractor, and not an employé, unless a contrary conclusion was apparent from all the other circumstances.

In the present instance there seems to have been no definite contract between Simmons and Shannon, and the true situation must be arrived at largely by implication. So far as the actual agreement of the parties is concerned, there is an absence of every element of an agreement making them employer and employé. Every element that is necessarily implied from the acts and conduct of the parties tends to show that Shannon was a contractor.

[3] This is important when we consider the fact that the burden of proof was upon plaintiffs in error to show that Shannon was at the time of the accident an employé of Simmons.

At page 725 of the annotation in 20 A. L. R. is this statement:

"The absence of any testimony warranting the inference that the employer actually exercised control over the work while it was in progress has frequently been adverted to as an element which tended to prove that he had no right to exercise his control, and consequently that the person employed was an independent contractor. Having regard to the circumstances under which work of most of the descriptions discussed in this treatise is ordinarily performed, it may be said that the omission of the party by whom the independence of the contract is denied to offer such testimony must usually be decisive."

[4] Looking to all the facts and circumstances surrounding the parties to this transaction there appear to be present several of the elements regarded as having much probative force in determining that the contract is an independent one. We shall briefly refer to some of these:

(1) A circumstance tending to show that the relation is that of contractor and contractee, and not of master and servant, is the fact that the work to be done was such as required special skill for its proper performance.

(2) Closely allied to this is the consideration that the person employed is to produce certain results by such means and methods as he may think proper, and in doing so will be entitled to employ his own help.

(3) An element of much importance is evidence to the effect that the person contracted with is to furnish a part or all of the materials or appliances for doing the work, and when combined with the other consideration that he has the right to furnish all the labor for the performance of the work, this is usually regarded as conclusive that the contract is an independent one; unless there are other circumstances present clearly indicating a contrary conclusion.

(4) Another element of great importance is stated at page 1295 of the annotation in 19 A. L. R. in this language:

"Where the undertaking of the person employed was for the performance of a certain description of work during a definite or indefinite period, the independent quality of the contract may be inferred from the two circumstances that he was engaged in a distinct and generally recognized employment, and that his stipulated remuneration was either a gross sum of money, or an amount to be determined with reference to a quantitative standard."

(5) The manner in which the person employed is to be compensated standing alone is seldom more than of minor importance. However, in this instance the compensation was determined by Shannon himself, or at least was not a matter of contract between the parties, and strictly speaking could not be considered "wages" at all. It is therefore of considerable importance in determining the true relation of the parties in this transaction.

(6) And still another circumstance of considerable probative force is the fact that the person employed is a free agent as to his hours of labor, and is under no obligation to work exclusively for the person with whom he is employed.

Applying these tests, there remains no doubt whatever that Shannon, at the time he was killed, was not an employé of Simmons, but his employment was an independent one. He owned the machine with which the work was done; he furnished all of the material; he did the work according to his own ideas and method, having the right to employ any necessary help; he could apparently begin when he pleased and chose his own hours of labor; he did not submit himself to the control of any one in respect to the details of the work; and he was to be compensated on a basis other than ordinary wages. The only circumstance tending to show that there was the relation of master and employé between the parties is the fact that Simmons told him that after completing the surfacing of the director's room they would have no further use for the machine. There was no definite contract or agreement that Shannon was to do any particular amount of work, or surface any particular number of rooms. In the absence of such agreement, the fact that he was permitted to surface only one room with the machine is of no probative force, in the light of all the other circumstances.

In view of the diversity of opinion and the fact that the courts have emphasized first one and then another of the circumstances mentioned, decisions, except as showing application of the general rules, are seldom controlling authority. However, we have selected some of our own decisions and recent decisions of other courts arising under the compensation laws, in work similar to that being done in this instance, and think they strongly sustain the conclusion we have announced.

We have read the cases cited by plaintiffs in error, and find that with possibly one exception the decision in every case was based upon the circumstance that the employer had or exercised the right of control over the person employed as to some or all of the details of the work being done. The one possible exception, and the case most strongly relied upon by plaintiffs in error, is that of Rheinwald v. Builders Brick & Supply Co., 168 App. Div. 425, 153 N. Y. Supp. 598. However, that case was reversed, and on a second appeal Rheinwald was held to be an independent contractor and not an employé. See 174 App. Div. 935, 160 N. Y. Supp. 1143 and 223 N. Y. 572, 119 N. E. 1074.

We think no other reasonable conclusion can be drawn from all the facts and circumstances of this case than that Shannon was an independent contractor as to the work he was doing at the time of his death, and it follows that plaintiffs in error cannot recover as against either of the defendants. S. W. Tel. & Tel. Co. v. Paris, 39 Tex. Civ. App. 424, 87 S. W. 725; Simonton v. Perry (Tex. Civ. App.) 62 S. W. 1090; Edmundson v. Coca-Cola Co. (Tex. Civ. App.) 150 S. W. 273; Texas Refining Co. v. Alexander (Tex. Civ. App.) 202 S. W. 131; Ball v. Bertelle's Estate, 201 App. Div. 768, 195 N. Y. Supp. 150; Bache v. Salvation Army, 202 App. Div. 17, 195 N. Y. Supp. 151; Petrow & Giannou v. Shewan, 108 Neb. 466, 187 N. W. 940; Woodhall v. Irwin, 201 Mich. 400, 167 N. W. 845; Village of Weyauwega v. Industrial Commission, 180 Wis. 168, 192 N. W. 452; Storm v. Thompson, 185 Iowa, 309, 170 N. W. 403, 20 A. L. R. 658; Smith v. Workmen's Ins. Fund, 262 Pa. 286, 105 Atl. 90, 19 A. L. R. 1156; Litts v. Industrial Com., 224 N. Y. 321, 120 N. E. 730, 19 A. L. R. 1147; Carleton v. Foundry & Machine Co., 199 Mich. 148, 165 N. W. 816, 19 A. L. R. 1141; Flickenger v. Ind. Accident Board, 181 Cal. 425, 184 Pac. 851, 19 A. L. R. 1150.

We recommend that the judgment of the Court of Civil Appeals be in all things affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.