## SECURITY UNION CASUALTY CO. v. M. & V. TANK CO. (No. 12056.)

Court of Civil Appeals of Texas. Fort Worth. Nov. 1, 1928.

Rehearing Denied Jan. 5, 1929.

See, also, 295 S. W. 292.

Raymond M. Myers, of Wichita Falls, for appellant.

Dawson & Holliday, of Wichita Falls, for appellee.

BUCK, J. This is an appeal from a judgment of the county court at law, of Wichita county, denying the Security Union Casualty Insurance Company a judgment in its suit against the M. & V. Tank Company, on a claim for balance of a premium alleged to be due the Oil Men's Reciprocal Association, under a policy of group insurance by said association to the M. & V. Tank Company. Plaintiff alleged and proved that it had bought out the Oil Men's Reciprocal Association, and was entitled to all of its assets and claims, and had assumed all of its policies and other obligations. The only controversy involved is as to that part of the premium alleged to be due for insurance of "truckmen, drivers, chauffeurs, and helpers." The defendant denied that it employed or had on its pay roll any truckmen, chauffeurs, drivers, etc. It alleged: That it manufactured welded tanks for dealers and bolted and wood tanks, and that it delivered the bolted and wood tanks to purchasers in the oil fields. That it let the delivery of the tanks to various independent contractors. That it had no control over the employees of such independent contractors, and looked directly to the contractors for the performance of hauling the tanks. From a judgment in favor of defendant, the plaintiff has appealed.

The trial court filed his findings of fact and conclusions of law as follows:

### "Findings of Fact.

"1. I find that during the period from July 1st, 1922, to July 1st, 1924, the defendant, M. & V. Tank Company, was engaged in the business, in Wichita County, Texas, of manufacturing oil field tanks and selling the same delivered out into the oil fields where they were to be used. I also find that the Oil Men's Reciprocal Association, a reciprocal insurance exchange, was engaged in the business of exchanging policies of compensation insurance between 'Subscribers' as that term is used in 'Workmen's Compensation Laws of Texas,' and that said Oil Men's

Reciprocal Association issued to the M. & V. Tank Company, the defendant, and the M. & V. Oil Company, the policy of compensation insurance attached to the plaintiff's original petition herein, and on or about the date shown in said policy.

"2. I find that said policy remained in force for a period of two years and was duly canceled and terminated on July 1st, 1924.

"3. I find that by the terms of said contract (without quoting in full detail but adopting by reference so much of the same as may be material in the present controversy) the basis of the premium to be paid by the defendant under said policy was the remuneration earned by the employees of the defendant during the period which said policy remained in force, and that the premium would be computed at the rate per hundred dollars of remuneration as set out in the endorsement attached to and forming a part of said policy.

"4. I find that on or about the 3rd day of December, 1924, D. P. Atlee, an auditor representing the Oilmen's Reciprocal Association, audited the books and records of the defendant as authorized in condition 'C' of the conditions of said policy, and prepared an audit or report by which he claimed that the defendant was indebted to the Oilmen's Reciprocal Association an additional premium of $529.22. I find that thereafter, on or about the 28th day of March, 1925, the defendant paid to the Oilmen's Reciprocal Association the sum of $227.07, leaving in dispute the alleged balance herein sued for.

"5. I find that the balance herein sued for was the two items shown in the said auditor's report at 'Truckmen,' said report appearing as exhibit 'B' to the plaintiff's second amended original petition, the first item being $143.81, and the second item for the second period covered by said audit, being $158.34, there being no dispute as to the amount of these items, the controversy being as to whether they were chargeable as premium at all under the terms of the policy and the facts in evidence in the case.

"6. I find that said charges for truck men as set up in said auditor's report, were based upon gross amounts paid by the defendant to truck men and teamsters during said period. I find as a fact that during said period as plead by the defendant in its first amended original answer, it was not in the truck or hauling business; that its practice was to sell oil field tanks to operators out in the field, delivered and set up on the ground; that it would let the hauling of these tanks out to hauling contractors under contracts by which the truck men or haulers would use their own trucks or equipment, their own employees and assistants, and their own means and methods of doing the work, and without being subject to the control of the defendant as to the details of said work, but being responsible to the defendant only for the result of its performance. I also find that the employees of these truck men and haulers were not employed by the defendant, were not subject to its control, received no wages directly from it, and were responsible only to their employers, the said truck men and hauling men.

"6. I find that no operations were undertaken by the Subscriber which were not rated in the declarations and endorsement to said policy.

"7. I find that during the month of May, 1925, the plaintiff herein, the Security Union Casualty Company, or Security Union Insurance Company, was incorporated under the laws of the State of Texas, for the purpose of carrying on a workmen's compensation insurance business, and specially for the purpose of taking over the assets and assuming the liabilities and succeeding to the business of the Oilmen's Reciprocal Association. I find that the incorporators and active officers of said corporation were the attorneys in fact mentioned in the 'Subscriber's Agreement' forming a part of said policy, and shown in the statement of facts, and some of the members of the 'Advisory Committee' as provided for in said 'Subscriber's Agreement.' I find that after the incorporation of the plaintiff said attorneys in fact, acting together with and under advice of said Advisory Committee, assigned and transferred to the plaintiff all of the assets, business and good will of the Oilmen's Reciprocal Association, and that as a part of the consideration for said assignment the plaintiff herein assumed all of the liabilities and obligations of said Oilmen's Reciprocal Association, and that upon the consummation of said transaction the said Oilmen's Reciprocal Association had no further assets and at once ceased operations and was put entirely out of business. I find, however, that the M. & V. Tank Company was not consulted about said assignment and has never consented thereto.

"Conclusions of Law.

"1. I conclude as a matter of law that the succession of the plaintiff to the rights of the Oilmen's Reciprocal Association, if any, was valid and binding upon the defendant herein.

"2. I conclude further, however, that the items charged and sought to be recovered herein, being for truck men and haulers, cannot be sustained under the law and the terms of the policy, in that under the facts as found, these truck men and hauling contractors and their employees were not employees of the defendant, but were what is commonly designated as 'Independent-Contractors.'

"3. I conclude as a matter of law that under the terms of said policy the insurance provided by said policy did not cover said independent-contractors or their employees,

and that the defendant was not obligated under the terms of said policy to pay any premium based on the amount paid to said independent-contractors."

"4. I conclude as a matter of law, under the facts found, that said policy contains the complete contract, and that under said facts no conditions existed which warrant the resort to manual of rates or rules used by the insurer and which therefore under the facts constituted no part of the insurer's contract."

### Opinion.

It is admitted that the plaintiff company was doing business under the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309) and that the contract of insurance should be construed by the provisions of that law and the decisions of the courts with reference to the law. The first proposition is:

"1. Where a policy of insurance provides for the computation of premium on remuneration paid contractors, subcontractors and their employees, a subscriber is obligated to pay premium on remuneration paid truckmen, drivers, chauffeur and helpers, though they are not employees of the assured but contractors and their employees.

"2. The Workmen's Compensation Insurance Manual becomes a part of an insurance policy contract where the policy contract provides that:

"'If any operations, as above defined, are undertaken by this subscriber but are not described or not rated in said declaration, this subscriber agrees to pay the premium thereof at the time of the final adjustment of the premium in accordance with condition "C" at the rates and in compliance with the rules of the Manual of Rates in use by the association upon the date of issue of this policy.'"

It is admitted that truckmen, chauffeurs, and helpers are not rated in said policy. The policy contains these provisions:

"This agreement shall take effect June 30th, 1922, when our attorneys are authorized to issue us contracts of indemnity in accordance herewith and as per schedule of Warranties below, which contracts we agree to accept, and, upon their receipt, to deposit with our attorneys for our own credit initial deposit mentioned in the Schedule of Warranties below. In addition thereto we shall keep the said deposit intact, which we agree to do by check or by paying sight drafts, which our attorneys are hereby authorized to make against us for our share of the losses and expenses incurred, limited to amounts and conditions described in Clauses 2, 6 and 11.

\* \* \* \* \* \* \* \*

"A. The premium is based upon the entire remuneration earned during the policy period by all employees of this subscriber engaged in the business operations described in said declaration, together with all operations necessary, incident or appurtenant thereto or connected therewith. \* \* \* If any operations as above defined are undertaken by this subscriber but are not described or rated in said Declarations, this subscriber agrees to pay the premium thereof at the date of final adjustment of the premium in accordance with condition C hereof, at the rates, and in compliance with the rules of the Manual of Rates in use by the association upon the date of the issue of this policy."

The policy also contained this provision:

"Item 4. The estimated remuneration includes that of all persons employed, whether remunerated by salary wages, for piece work, overtime or allowances, and whether paid in cash, in whole or in part, in board, store certificates, merchandise, credits, or any substitute for cash, at the above locations, for the purpose of the trade or business described herein, to whom remuneration of any nature is paid, and also including President, Vice-President, Secretary, Treasurer of a corporation if actually performing such duties as are ordinarily undertaken by a superintendent, foreman, or workman, also including employees of contractors and subcontractors, except as follows:

"None (Describe any contract work excluded.)"

Mr. D. P. Atlee, witness for plaintiff and auditor, testified as follows:

"With reference to my audit here showing the two disputed items which I have listed here as truckmen for the first period under the head of actual wage, $3,725.66, and under the head of earned premium for that period, $143.81, at what rate I figured that wage in arriving at that premium, the rate is shown right there over to your left in the column headed 'Rate'; it appears as $3.86, which means $3.86 per hundred. The $3,725.66 is not the actual amount I found on the books of the M and V tank Company for that period that they had paid to truckmen, that is only one-third of the actual amount paid. I took one-third both in this period and the second period, one-third of the actual amount shown as truckmen and computed the premium on the basis of $3.86 per hundred arriving at the premiums which I set down there. (Exhibiting paragraph, 7.) It covers both drivers and their helpers. In other words, my authority, as I took it for taking one-third of the total amount appearing on the M and V tank Company's books as now paid to truckmen, is from Paragraph 7 of the Workmen's Compensation Insurance Manual of 1922."

Paragraph 7 of the Workmen's Compensation Insurance Manual of 1922 provides as follows:

"*Drivers and Their Helpers.*—This designation shall include those whose principal duties are performed upon, or in connection with horse drawn vehicles in either capacity. The entire remuneration of such drivers and

their helpers, including stablemen, shall be separately stated in the application or proposal and shall be subject to the premium rate provided in this Manual except as to such classification which specifically direct. that the rate for the classification shall also be the rate for drivers and their helpers.

"Where teams, including drivers and helpers, are employed under a contract with the owner of such teams, the actual payroll of the drivers and helpers shall be included in the payroll of the insured employer at the proper compensation rate for such employees. In case such payroll cannot be obtained, then one-third of the total amount paid for such teams under contract with the owner shall be considered as the payroll of the drivers and helpers.

"The above shall not apply if the owner of the hired teams has insured his compensation obligation and has furnished satisfactory evidence of such insurance."

In the manual there is this provision:

"*Chauffeurs and Their Helpers.*—This designation shall include all employees whose principal duties are performed upon or in connection with automobiles in either capacity. The entire remuneration of such chauffeurs and their helpers, including incidental garage employees, shall be separately stated in the application or proposal and subject to the premium rate provided in their manual except as to such classification which specifically direct that the rate for the classification shall also be the rate for chauffeurs and their helpers.

"Where automobiles including chauffeurs and helpers are employed under a contract with the owner of such automobiles, the actual payroll of the chauffeurs and helpers shall be included in the payroll of the insured employer at the proper compensation rate for such employees. In case such payroll cannot be obtained, then one-fifth of the total amount paid for such automobiles under contract with the owner shall be considered as the payroll of the chauffeurs and helpers.

"The above rule shall not apply if the owner of the hired automobiles has insured his compensation obligation and has furnished evidence of such insurance."

Mr. Atlee further testified:

"This classification of truckmen N. O. C., which is the one in dispute in this law suit, includes both drivers and chauffeurs. A driver is being interpreted as being a man that drives a team, and the chauffeur of an automobile. * * * I could not from the books of defendant determine what this money went for that they paid for conveyance, and whether for teams or for trucks. I made inquiry with reference to it. The books only show drayage or hauling; the entries were made under those headings. I questioned the bookkeeper as well as Mr. Fulton on that very item because we tried to get the teamsters and chauffeurs separated in order to apply the one-third or one-fifth. I was told that there was no way of segregating that, sometimes they used teams and sometimes they used trucks. * * * It was after I had been unable to segregate these two items that I applied this one-third instead of the one-fifth. I believe that I explained to the employees of the defendant the necessity for applying the one-third, I do not know; here is the law on it."

Section 4 of the policy, under the heading "Basis of the Premium," provides that the premium is based upon the entire remuneration earned during the policy period by all employees of the subscriber. It says nothing about any premium based on amounts paid on contracts to independent contractors.

Article 8309, § 1, under Workmen's Compensation Law, defines an employee as follows:

"'Employee' shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written, except masters of or seamen on vessels engaged in interstate or foreign commerce, and except one whose employment is not in the usual course of trade, business, profession or occupation of his employer."

This paragraph of the policy does not provide for any premium to be based on amounts paid on contracts to independent contractors.

In Shannon v. Western Indemnity Co., 257 S. W. 522, by the Commission of Appeals, and approved by the Supreme Court, it is held that an employee, under the Workmen's Compensation Law, means every person in the service of another under contract of hire, and includes all those engaged in the service of another, whether in performance of manual labor, or in positions of management or trust, and whether being paid wages or salary, so long as they remain under ultimate control of employer; that an independent contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. We think, under this authority, that the employees of an independent contractor, who are employed by the contractor and not by the subscriber, and who are not in any way responsible to the subscriber or person with whom the independent contractor has contracted, should not be considered as employees of the person or company for which the contractor has engaged to do a particular piece of work.

In Tilling v. Indemnity Ins. Co. of North America, 283 S. W. 565, by the Galveston Court of Civil Appeals, writ of error refused, it was held that a night watchman furnished the company by a detective agency, retaining entire control and direction over him and paying his wages, was not an employee of the company within the Workmen's Compensation Law.

In Kirby Lumber Co. v. McGilberry, 205 S.

W. 835, by the Beaumont Court of Civil Appeals, it was held that, where a contract provided that the buyer of timber should reimburse seller for wages paid scalers, not to exceed $50 per month each, a scaler employéd by, and who worked under the direction of, a seller, was not an employee of the buyer, within the Workmen's Compensation Law.

In Texas Employers' Ins. Ass'n v. Owen, 298 S. W. 542, the Commission of Appeals held that the test in determining whether one injured is an employee or an independent contractor is whether employer had and exercised control over him in prosecution of his work; that a contractor is a person who, in pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details, and who represents the will of his employer only as to the result of his work. See 19 A. L. R. pp. 1168–1361, and 20 A. L. R. pp. 684–808, as to who is an employee, and the distinction between an employee and an independent contractor and an employee of the person with whom the independent contractor had contracted to do a specific piece of work.

█ The court in his findings of fact found that the basis of the premium to be paid by the defendant company under the policy was the remuneration earned by the employees of. said defendant during the period which said policy remained in force. He further found that the charges for truckmen, as set up in the auditor's report, were based upon gross amounts paid by the defendant to the independent contractors for hauling the tanks to the oil fields; that said contractors used their own means and methods of doing the work without being subject to the control of the defendant as to the details of said work, but being responsible to the defendant only for the results of its performance; that the employees of the truckmen and haulers were not employed by the defendant, were not subject to its control, received no wages directly from it, and were responsible only to their employers, the said independent contractors. The court further found that no operations were undertaken by the subscriber which were not rated in the declarations and indorsement to said policy.

We adopt the findings of fact by the trial court.

█ But if we be mistaken in applying the general rule as to who are employees of a subscriber, as determined by the statute and the decisions hereinabove cited, yet we think for another reason that the judgment should be affirmed. Defendant pleaded that on or about December 3, 1924, when a copy of the audit was furnished it, on examination of the same, and a comparison of it with its books and records, it denied that it was due the plaintiff an additional premium of $529.22, as shown by the said audit; defendant insisting that it had theretofore made to the plaintiff, as required by its said policy, correct reports concerning the pay roll of its employees, and that it was not due to the plaintiff said additional premium claimed, of $529.22; that a dispute arose between the parties concerning said item, which controversy was bona fide; and which was not adjusted until on or about the 28th day of January, 1925, when an amicable settlement of the same was reached and agreed upon by the parties; that, in compliance with this agreement between plaintiff and defendant, plaintiff paid to defendant $227.07, and the plaintiff agreed to waive its claim for said trucking items; that both parties then and there agreed to said settlement of said controversy and difference, and the defendant then and there complied with its part of said agreement by paying to the plaintiff the sum agreed upon, to wit, the sum of $227.-07; that plaintiff then and there accepted said settlement, and that the difference between plaintiff and defendant was adjusted and settled, and that plaintiff is now estopped to repudiate its said agreement of settlement and to violate its said contract without returning to the defendant the said sum received by it as consideration for the same.

The evidence of D. P. Atlee, as witness for plaintiff and auditor, showed the existence of this disagreement as to the $529.22. The check for $227.07, given by defendant and accepted by plaintiff, was introduced in evidence, and it had on its face, "In full settlement of the within account," and also had on its face this statement: "Additional Premium due under Policy #WC 62 for the period from July 1, 1922, to July 1, 1924 $227.07." Below this last statement was this signature: "March 28, 1925 Oilmen's Reciprocal Association $227.07."

We think that it definitely appears that any difference between the plaintiff and defendant was adjusted by the payment of the amount named in the check by defendant and the acceptance thereof by plaintiff, or its predecessor, the Oilmen's Reciprocal Association.

All assignments of error are overruled, and the judgment is affirmed.