## TRADERS & GENERAL INS. CO. v. FLETCHER.

### No. 13774.

Court of Civil Appeals of Texas. Fort Worth.

May 27, 1938.

Rehearing Denied June 17, 1938.

T. R. Boone and Kearby Peery, both of Wichita Falls, for plaintiff in error.

J. Earle Kuntz and McDonald & Anderson, all of Wichita Falls, for defendant in error.

BROWN, Justice.

This is a workmen's compensation case. The plaintiff in error, who is the insurance carrier, was defendant in the trial court, and will be so designated by us in the opinion. The defendant in error was plaintiff below, and will be referred to as plaintiff herein.

Plaintiff appealed from an award of the Industrial Accident Board of Texas, which had denied him compensation, and alleged that he was an employee of the partnership firm known as Combs & Glade, which partnership carried workmen's compensation insurance with the said defendant.

348

The plaintiff was injured by a motorist who ran his automobile into plaintiff when he was returning a team of mules to their owner, which team had been used in plowing up Bermuda grass, with which his employer was sodding the shoulders of the public highway on which his employer was working and on which job plaintiff was an employee. In plaintiff's pleading he sought to show that the team of mules was hired by his employer from the owner, and that he was instructed by the employer to return the mules to the owner, after his employer no longer needed the team, and that in carrying out such instructions, he was injured on the public highway while performing the duties of his employment, in returning the team, but the defendant specially pleaded that the plaintiff secured this team from the owner and was paid by the employer so much per hour for the use of the team; that plaintiff had the duty to look after the team and care for them and to return the same to the owner from whom plaintiff had secured the team, and that the payment on the part of the employer to plaintiff for the use of the team was a contract separate and independent from plaintiff's work as an employee, and that in such matters plaintiff was an independent contractor, and that he was injured at a time when he was returning the team to the owner from whom plaintiff had personally secured the use of the team, and was therefore not engaged in the course of his employment when so injured. No reply was filed by plaintiff to these defensive allegations.

The case was tried to a jury.

It appears from the statement of facts that plaintiff, Fletcher, personally made arrangements with one Hodge, the owner of this team, to pay Hodge $1 per day for the use of the team, and that plaintiff assumed the obligation of looking after, caring for and feeding the team. The following appears in the statement of facts: "Q. In other words, you hired the team for $1.00 per day and you fed them and looked after them at your own expense? A. Yes, that was the agreement, that I would pay $1.00 a day for the use of the team and feed them at my own expense and look after them at my own expense." Such plain statement and unequivocal testimony the plaintiff gave when his deposition was taken, and although he attempted to change the facts somewhat on direct examination during the trial, yet on cross examination he admitted that he had testified to these positive facts.

"Q. You were to help Hodge look after the team? A. Yes, sir, in a way.

"Q. Then you were to get something for looking after the team because you were to feed them and give him $1.00 a day for the use of them? A. No, sir. Not just like that.

"Q. Isn't that what you said—read it over. 'Well, after they worked a while out there I walked over and talked to him and he said they cost so much to feed them to just go ahead and pay the feed and kind of look after them and see that they did not stray off or run off, and he told me (referring to Hodge) you can give me $1.00 a day for the team and you can have the rest for kind of looking after them.' Now, was that true? A. Yes, sir.

"Q. Now you, in other words, hired the team for $1.00 a day and you fed it and looked after it and you were to keep the rest? A. Well, if they had cost more than that I don't suppose I would have got anything, do you?"

When questioned on cross examination, with respect to his positive testimony given before the notary public, to the effect that plaintiff would pay the owner $1 a day for the use of the team and would feed the team at his own expense and look after it at his own expense, plaintiff was asked:

"Q. Now, did you testify to that before this girl on April 14th, (meaning the notary public)?" He answered: "A. Yes, sir, I suppose I did."

And he was asked: "Q. Is that true? A. Well, I tried to tell it.

"Q. Is that correct as I have read it to you? A. Well, as near as I can tell you."

He was then asked: "Q. And did you say in answer to this question, 'And Combs & Glade paid you the sum of 35 cents an hour for the use of the team'? A. I think 30 cents an hour when I got paid is what it came to.

"Q. Well, either 30 or 35 cents? A. Yes.

"Q. How long did they use the team? A. They used the team—they were over there 21 days but they used them only 9 days.

"Q. Now, was that true?" The plaintiff answered, "Yes, I think so."

The owner of the team testified as follows: "When Mr. Fletcher came the first time I told him I was looking for him to

take care of the team. I did not know the company Fletcher was working for and I had no dealings with them. That is true."

The employer's foreman, under whom the plaintiff worked, testified as follows: "Quitting time for Fletcher on the day in question was 4:00 o'clock. I did not pay him for taking the mules home. I did not report his time. I never said anything about him losing any time in bringing the mules home. I never made and never heard of any such statement. He did not have anything to do out there on the road for the company." This testimony refers to the time when plaintiff was taking the team of mules home, and when he alleges he received his injuries.

It is undisputed that the employer paid Fletcher for the use of the team, and had no dealings whatever with the owner. It thus appears from the undisputed record that Fletcher hired the team from the owner for $1 a day; that he agreed to bear the expense of caring for and feeding the team, and that his employer agreed to pay him personally a certain rate per hour for the use of the team.

After the completion of the taking of evidence, the defendant requested the trial court to give the jury a peremptory instruction in its behalf, which request was denied and proper exception taken. This action furnishes the first assignment of error presented to us. We believe that the assignment of error is well taken; that the undisputed facts show that so far as obtaining the team for use on the project, the letting of the team to plaintiff's employer and the returning of the team by plaintiff to the owner from whom plaintiff had hired the team, the plaintiff was an independent contractor. Having been injured on the road while returning the team to its rightful owner, it cannot be said that plaintiff was acting within the scope of his employment. Security Union Insurance Co. v. McLeod, Tex.Com.App., 36 S.W.2d 449; Southern Surety Co. v. Shoemake, Tex.Com.App., 24 S.W.2d 7; Shannon v. Western Indemnity Co., Tex. Com.App., 257 S.W. 522. Because of the error pointed out, the judgment of the trial court should be reversed and judgment here rendered for appellant, defendant below.

We are of opinion that the assignment of error attacking the charge of the court, because of the court's definition of an independent contractor, in view of the particular circumstances and facts in this case, is well taken, and that the assignment of error attacking the judgment of the court which awarded the plaintiff below compensation for the full period of 401 weeks, on the theory of plaintiff being totally and permanently incapacitated, is well taken, because of the hopeless conflicts found in the verdict of the jury. These conflicts appear under the following circumstances: The jury found in answer to special issues, (1) that Fletcher suffered incapacity as a result of his injuries; (2) that he was totally incapacitated for work for a period of time; (3) that the total incapacity is permanent; (4) that the total incapacity will continue at least 401 weeks; (5) that Fletcher was or will be partially incapacitated after his period of total incapacity ceases; (6) that his partial incapacity, after the period of total incapacity has ceased, is permanent; (7) that the period for which the partial incapacity for work will continue after the total incapacity for work has ceased is at least 401 weeks; (8) that the percentage of partial incapacity the plaintiff will suffer after the total incapacity has ceased is 100 per cent; (9) that plaintiff was partially incapacitated for work at the time of the trial; (10) that such partial incapacity is permanent; (11) that the percentage of incapacity for work that plaintiff sustained is 100 per cent; (12) that the partial incapacity for work is permanent; (13) in answer to the issue asking how long the plaintiff's partial incapacity would continue from the date of his injuries, the jury answered, "Permanent"; and (14) in answer to the next issue inquiring what percentage of partial incapacity for work the plaintiff has suffered, the jury answered, "100%."

Undoubtedly these conflicting answers would require the judgment to be reversed and the cause remanded, if we should not be correct in sustaining the first assignment of error. Texas Employers Ins. Ass'n v. Phelan, 103 S.W.2d 863, an able opinion by Mr. Justice Jackson of the Court of Civil Appeals for the Seventh District.

For the reasons given, the judgment of the trial court is reversed and the judgment is here rendered for appellant.