## UNITED STATES FIDELITY & GUARANTY CO. v. HALL.

### No. 9813.

Court of Civil Appeals of Texas. Austin.

Oct. 26, 1949.

Rehearing Denied Nov. 16, 1949.

———◆———

·House, Mercer & Kaine, of San Antonio, for appellant.

Ernest Morgan, of San Marcos, Allen, Smith & Neal, of Houston, for appellee.

GRAY, Justice.

This is a compensation case wherein appellant, the insurance carrier for Cameron Roofing Company, has appealed from a judgment (rendered upon a jury's verdict) awarding appellee damages for injuries sustained by him when a scaffold, on which he was standing while painting a wall, collapsed and caused him to fall.

Appellant answered appellee's petition by general denial and further that appellee was an employee of one M. H. Nesbitt, an independent contractor. By supplemental petition, appellee alleged that Cameron, the general contractor, sublet all or a portion of the work with the purpose and intention of avoiding liability under the Workmen's Compensation Laws of Texas, and that by reason of the provisions of Sec. 6 of Art. 8307, Vernon's Ann.Civ.St., appellee is deemed to be an employee of Cameron.

In answer to a special issue, the jury found that the contract between Cameron and Nesbitt was entered into by Cameron with the purpose and intent of avoiding liability imposed by the Workmen's Compensation Laws of Texas.

The action of the trial court in overruling appellant's motion for an instructed verdict is brought forward for review, and presents the questions:

(1) Does the evidence show as a matter of law that appellee, at the time he sustained the injuries complained of, was the employee of an independent contractor, and was not an employee of Cameron?

(2) Is there sufficient evidence to raise a jury issue as to whether or not Cameron let a portion of the work to Nesbitt, with the intent to avoid liability under the Workmen's Compensation Laws of Texas?

And, finally, the application of the provision of Sec. 6 of Art. 8307 to the facts of this case.

The facts as developed at the trial show:

Cameron Roofing Company is a contracting company of Wm. Cameron and Co., Inc., used by the latter as a contracting agency for carrying on contract work, and the agents or managers of the one are also agents or managers of the other.

Cameron contracted, in writing, with Henry C. Kyle to remodel, repair, paint and paper a house in San Marcos, Texas, in accordance with attached plans and specifications. Cameron subsequently relet the carpenter work, the plumbing, the floor finishing to others, and relet the papering and painting to M. H. Nesbitt by written contract, which provided Nesbitt was to furnish all tools and labor necessary to do the painting and papering on the Kyle job; the work to be completed on or before November 1, 1947. The contract price was $750, seventy-five per cent of which was to be paid as the work progressed and the balance upon completion. The contract recited the work was to be done in accordance with the plans and specifications covering the work, "unless otherwise provided for herein," further recited that Nesbitt was an independent contractor and that his employees were to work under his supervision, and that they were not employees of Cameron. The contract provided that Nesbitt would carry compensation insurance in conformity with applicable state statutes, would pay taxes on pay rolls and make reports in connection therewith.

Appellee testified that his occupation was painting and paper hanging; that Nesbitt saw him on the street and told him he wanted him to go out on a Cameron job and go to work, and told him what the pay would be and how many hours per day he would work. That on the following Monday he did go to work; that he does not know whose ladders and brushes he used and did

not know anything about Nesbitt's connection with Cameron; that Nesbitt gave him all of his instructions and told him where to paint and how to paint; that he worked on the job a week and three days when he was injured by the collapse of a scaffold that he said he and Nesbitt built; that Nesbitt sent him the money for his work by his (appellee's) son.

M. H. Nesbitt said he dealt with Sam Bowers (Cameron's local manager in San Marcos) in making the contract; that Bowers did not tell him who to hire or who not to hire; that the ladders and brushes used on the job belonged to him (Nesbitt); that as the work progressed he drew money from Cameron and paid for the labor; that he told appellee what to do and where to do it, and had the right to hire and fire him; that Cameron did not have this right; that Sam Bowers came out on the job most every day—there is some speculative testimony as to what Nesbitt would or would not have done if Bowers had given instructions; however we find no actual control exercised by Bowers over the details of the work.

Sam Bowers testified that the Kyle job was handled by subcontracting the work, and that the real purpose of doing a job this way is to secure for Cameron the profit that has been estimated in the job by knowing the cost factors of the subcontractors in their specialized fields, so that the cost of the job will be known and the labor risk eliminated; that no agreement other than the written contract was had with Nesbitt; that he went out on the Kyle job frequently, which he had the right to do, to to see that the plans and specifications were being followed and to see how the job was progressing in order to be able to advance money under the contract; that he never gave Nesbitt instructions as to where to work, how to work, or as to any of the details of the work. That Nesbitt completed the work according to the plans and specifications, but that he did come back and do some extra work for which he was paid $50. Bowers also gave testimony to the effect that some bookkeeping was eliminated by making the subcontracts, but denied that the purpose of the contract

was to avoid liability under the compensation laws.

Mr. Harrell, Cameron's district manager, gave substantially the same reasons as did Bowers for the making of the subcontract, and further that Cameron was unable to carry experts in all fields of construction and elected to use the local contracting trades in contracts rather than become competitive agencies in the communities where they operate. He denied there was any intent to avoid liability under the Workmen's Compensation Law.

Article 8309, Vernon's Ann.Civ.St., defines an employer to be " * * * any person, firm, partnership, association of persons or corporations or their legal representatives that makes contracts of hire." And an employee to be " * * * every person in the service of another under any contract of hire, expressed or implied, oral or written, * * * except one whose employment is not in the usual course of the trade, business, profession or occupation of his employer * * *."

The evidence shows the contract of hire was made between appellee and Nesbitt, and that appellee was engaged in the service of Nesbitt. However, to determine whether or not Nesbitt was an independent contractor, it is necessary to determine if Cameron had the right not only to control the ultimate result to be accomplished by its contract with Nesbitt but, also, the control of the details of the work done in accomplishing such ultimate result.

The evidence shows that the ultimate purpose of the contract was the papering and painting on the Kyle job which was to be done in accordance with previously agreed on plans (the plans and specifications for the entire job); the work was to be completed on or before a specified time; Nesbitt was free to, and did, hire such assistants as he pleased, he fixed the amount of their pay, the hours of their work and furnished the tools with which they worked. Cameron, through its manager Bowers, made frequent visits to the job where several contracts were in progress, the purpose of such visits being to supervise the work as to whether it was being done according

to the contracts and to determine its progress, but no control of the details of the work was attempted or exercised by him. Applying these tests, the evidence shows that Nesbitt was, as a matter of law, an independent contractor. Halliburton v. Texas Indemnity Co., 147 Tex. 133, 213 S.W. 2d 677; Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905. We conclude that appellee was an employee of Nesbitt and not of Cameron.

To show that Cameron made the contract with Nesbitt for the purpose and with the intent of avoiding liability under the Workmen's Compensation Laws, appellee relies on the following circumstances:

Nesbitt's contract provided he should carry workmen's compensation insurance under applicable statutes, but none was carried though there were three employees; Cameron's insurance policy covered painters and paper hangers; the contract required Nesbitt to purchase materials from Wm. Cameron and Company, Inc.; Nesbitt's first bid was $800 for the job, the bid was reduced to $750 and Nesbitt received a total of $800 for work done; Nesbitt was not financially able to finance the job and used Cameron's money to pay his assistants and himself, and Cameron's manager was out on the job most every day supervising the work.

If Nesbitt violated his contract to carry compensation insurance, we find nothing in the record to suggest such violation was with the knowledge or the consent of Cameron. The fact that Cameron's policy of insurance covered painters and paper hangers is not evidence of the intent of Cameron in making the contract with Nesbitt, because it is shown that Cameron is engaged in the business of doing construction work of the nature of the Kyle job, sometimes doing the work itself and sometimes subletting it.

The fact that the contract provided that materials should be purchased from Wm. Cameron and Co., Inc., to the extent that it was a dealer in such merchandise has but little probative value. It has more to do with the ultimate result of the contract than with Cameron's intent in making it since the plans and specifications for the Kyle job called for named kinds of paints and varnishes to be used, and such materials were furnished by Cameron.

The payment of a total of $800 is explained by Bowers by saying that Nesbitt completed the work called for according to the plans and specifications, but that the owner (Kyle) was not satisfied and asked that additional work be done, that to satisfy the owner additional work was done, Nesbitt did the work and was paid $50 by Cameron for doing it. We see no evidence of the original intent of Cameron from such circumstances.

Nesbitt had worked for and through Cameron for many years and was well known to Bowers. The circumstance of his financial ability together with the fact that, as provided for in his contract, he drew progress payments which were used to pay his assistants and himself is of little value here in determining the intent of Cameron.

The fact that Cameron's manager was often on the job supervising it was no more than the exercise of a right of control over independent contractors recognized by our courts. Industrial Indemnity Exchange v. Southard, supra.

We think the circumstances relied on to show the intent of Cameron are as consistent with the non-existence of an intent to avoid liability on the part of Cameron as with the existence of such intent, and, at most, are not of sufficient probative force to form the basis for a legal inference, and therefore not sufficient to present a jury issue.

Since we hold that the evidence is not sufficient to present an issue of fact as to whether or not Cameron made the contract with Nesbitt for the purpose and with the intent of avoiding liability under the Workman's Compensation Laws, there is no occasion for us to construe Sec. 6 of Art. 8307.

What we have said here renders unnecessary a consideration of appellant's other assignments and requires that this cause be reversed and judgment here rendered.

that appellee take nothing as against appellant.

The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing as against appellant.

Reversed and rendered.