Walker GAINES, Appellant,

v.

ALLSTATE INSURANCE COMPANY,
Appellee.

No. 3675.

Court of Civil Appeals of Texas.

Eastland.

Nov. 24, 1961.

Rehearing Denied Feb. 16, 1962.

John H. Holloway, Houston, for appellant.

Bracewell, Reynolds & Patterson, Houston, for appellee.

GRISSOM, Chief Justice.

This is a workmen's compensation case. Walker Gaines fell from the roof of a house owned by Mrs. Lewis while he was putting on roofing which had been sold to her by Sears, Roebuck and Company. Gaines was injured in the fall. He claimed he was an employee of Sears and sued Allstate Insurance Company, who was Sears' workmen's compensation insurance carrier. The insurance company contended that Gaines was not Sears' employee, but the employee of Seawright and that Seawright was an independent contractor employed by Sears, as the agent of Mrs. Lewis, to install the roofing. The court sustained the insurance company's motion for an instructed verdict apparently upon the conclusion that there was no evidence of probative force that Gaines was Sears' employee. Judgment was rendered for Allstate. Gaines has appealed.

The contract between Sears and Mrs. Lewis recited that Sears had sold the roofing to Mrs. Lewis and that she had authorized Sears to arrange with a contractor to apply it in accord with "said specifications"; that it was understood Sears would not apply the roofing but would pay a contractor for installing it, the contractor's charge being included in the price charged Mrs. Lewis by Sears. It recited that installation of the roofing would be covered by workmen's compensation insurance carried by the contractor; that after completion of the job the rubbish would be removed by the contractor and that all excess material would remain the property of Sears. The substance of the "specifications" was to "reroof house and garage completely", using a certain numbered and colored roofing material; to use metal eaves and double ridges and valleys; to repair all rotten wood; to replace wooden shingles where needed and haul off the trash when the job was completed. Neither Sears' contract with Seawright nor any other writing added anything to said specifications or further directed how the roofing should be put on the house. Said contract shows a price of $686.00 for the roofing installed. Sears made a profit on both the materials and labor. For the stated price Sears simply

agreed to furnish the material and labor to put a new roof on her house and garage.

Gaines contends the court erred in holding as a matter of law that he was not an employee of Sears because the evidence raised an issue of fact as to whether Gaines was Sears' employee. He says the contracts show that Sears retained the right of control over the details of the work which was being performed by Gaines, that the evidence shows Sears exercised such control and that it was admitted that Sears sold Plaintiff's labor. Gaines alleged that when he was injured he was an employee of Sears or, if he was not an employee because of the contract, that, nevertheless, he was entitled to recover compensation by virtue of Article 8307, Section 6, because Sears made the subcontract with Seawright with the purpose and intention of avoiding liability under the compensation law. Allstate answered by a general denial. The court apparently instructed a verdict for Allstate because of its conclusion that there was no evidence of probative force that Gaines was Sears' employee.

The applicable test was stated by our Supreme Court in Elder v. Aetna Casualty & Surety Company, 149 Tex. 620, 236 S.W. 2d 611, 613, as follows:

"Did the publishing company actually assume and exercise such detailed control over Elder's physical conduct in the performance of the labor provided for in the contract as to make him a servant, even though the contract did not so provide?"

It was there also held that, the trial court having instructed a verdict, in applying the above stated test the court must look to the testimony most favorable to appellant's contention and reject all testimony that tends to disprove it. The quoted test was again approved by our Supreme Court by refusal of a writ of error in Mid-Continent Freight Lines, Inc., v. Carter Publications, Inc., Tex.Civ.App., 336 S.W.2d 885, 889.

For the purpose of showing that the evidence raised an issue of fact as to whether Gaines was Sears' employee, appellant calls attention to such matters as the following: Mr. Cooper, Sears' building inspector who supervised installation of the roofing at the time in question and on other jobs where Sears sold and had roofing material installed, testified that he was authorized to stop work on any job because of work performance "or anything else"; that he told Gaines how many nails to put in each shingle and how much tar to put under them; that, if the method for putting on roofing was not covered by the specifications, (and it is evident that it was not), that, as Sears' representative, he reserved the right to alter or change it as he saw fit; that if Seawright didn't have enough men on the job he had the right to see that he put on more. Mr. Seawright whom appellee says was an independent contractor, testified that the work orders furnished him by Sears did not instruct him how to apply the roofing; that they just said to "apply" so many square feet of a certain kind of roofing to a certain roof; that when Cooper was at such a job site and told him to do anything he generally did what Cooper told him to do, regardless of what it was. Mr. Gaines testified that when he was employed he "understood" he was working for Sears; that on the morning he was injured he arrived at the job site first and carried material to the roof; that when Seawright arrived they concluded there was not enough roofing at the site; that Cooper was called and Cooper instructed them not to do anything further until he got there, that after he got there Cooper called a Sears' salesman and, while they were waiting for him to arrive, Gaines told Cooper that he had another job which he wanted to return to and perform but that Cooper told him to stay where he was; that after Cooper, Seawright and Gaines had coffee and Sears' salesman arrived and talked with Cooper, Mr. Cooper said to appellant: "All right, Walker. You can go back to work now. Get up there and let's put that roof on."; that Gaines then returned to work; that when Cooper came to Sears' job sites he would tell Gaines to nail shingles down that were sticking up, to nail "all" of

them down; that Seawright would sometimes tell Gaines not to pay any attention to what Cooper said; that Cooper would direct them to nail all the shingles down; that he took his orders from Cooper; that on some of Sears' roofing jobs Cooper would tell Gaines and Seawright to nail "all" the shingles down; that Seawright would say to nail a "few" down; that it wasn't necessary to nail all of them down, but that when Cooper ordered them to nail them all down they nailed them all down; that when Cooper instructed them to move a ladder, put a tarpaulin over something, cover the flowers and to take a ladder down from a gutter so they wouldn't bend the gutter they obeyed Cooper's instructions; that Cooper would come out on Sears' roofing jobs and tell Gaines and Seawright to lap the shingles over more, let the shingles hang off more, put more cement around the chimney, and the like, and that they obeyed Cooper's instructions. For example, Gaines testified:

"Q. In other words, the details of the work; you did what Mr. Cooper told you to do?

"A. Yes, sir.

"Q. All right, Now, for instance the overlapping or leaving a shingle hanging off the edge of an eave or house, if he tells you a particular distance that it has to hang off, was there any specifications for that kind of work or was that something that just depended on what Sears wanted done?

"A. Now, that's * * *. Well, the customers * * * he would say 'The customers want more overhang.' Mr. Cooper would, on different jobs, say something like that, and also up on the gable, you know. I believe some customers they would not want the shingles to hang over a quarter of an inch or half an inch."

Gaines testified, in substance, that when Cooper would come on such job sites and give them instructions that Seawright would say he didn't think that what Cooper wanted done was necessary; that, nevertheless, when Cooper told him to raise or drop the shingles, put more cement around the edges of the chimney, and Seawright said it wasn't necessary, that he did as Cooper directed; that usually Cooper gave his orders directly to Gaines; that Sears' salesmen came out to a job and told Gaines what to do; that they would tell him to build a little back porch, or a strip, or put a couple of shingles around the edge, and the like, and that when they did he obeyed their orders. Gaines testified that Seawright paid him in cash but he understood Seawright brought his money from Sears. It is admitted that Sears' agreement with Seawright provided that if Sears' customer was not satisfied with the workmanship, or performance, that Sears had the right to notify Seawright and Seawright would immediately withdraw his workmen from the job; that Sears' agreement with Seawright, which was for three years, required him to accept all jobs tendered to him by Sears which he could satisfactorily perform and that the contract between Sears and the house owner, Sears' customer, contained an agreement that installation of the roofing would be covered by workmen's compensation insurance. Gaines testified that on roofing jobs where Sears had not sold the roofing material Seawright usually paid him by check. The contract between Sears and its alleged independent contractor, Seawright, provided that when Seawright determined that certain installation work could not be satisfactorily done he should then request further instructions from Sears. It provided that Seawright would do no extra work on any job not specified in writing by Sears and that Sears would pay Seawright a certain amount for each square of roofing applied; that Seawright had the duty to inspect materials furnished by Sears and advise Sears of any defects and that he was required to employ sufficient competent adult workmen to complete each job with utmost dispatch. The "contractor" agreed to carry workmen's compensation insurance in companies and in amounts approved by Sears and it was also agreed that Sears, at its

option, could procure such insurance and charge the contractor with the premiums; that Sears had the right to designate the form of insurance policies and that the "contractor" agreed to file the policies with Sears. Cooper testified that it was his supervisor's duty to determine whether there was insurance coverage on each job and that when Seawright found a shortage of material he simply went to Sears and picked up the needed material without obtaining the consent of anyone. Cooper testified that Sears retained control over the hours Seawright worked to the extent that if he wasn't getting along as fast as Cooper "wanted him to" Cooper could stop him on that job. Cooper testified that, as Sears' representative, he had the right to alter or change the specifications to fit a particular roofing job and that on the job where Gaines was injured Sears had instructed Seawright as to the method he should use in applying the shingles; that Sears retained the right to tell Seawright how many nails should go into each shingle, to advise Seawright as to the details not covered by the specifications and that as to such details Sears reserved the right to alter or change them as it saw fit; that on this job the workmen were required to use Sears' tools; that if Seawright was working on two of Sears' jobs Sears retained the right to take him off one and put him on the other. Mr. Filmon, service manager in charge of Sears' installation department, stated that he ran such department but that Cooper was the supervisor who directed the activities of the contractors and that he gave the contractors the specifications.

It is evident from the record that there were no detailed plans or specifications telling Seawright how to put on the roofing; that, looking only to the evidence favorable to the plaintiff and rejecting all that tends to disprove it, there is evidence from which it might reasonably be concluded that Sears did actually assume and exercise such detailed control over Gaines' physical conduct in the performance of the labor provided for in the contract in question as to make Gaines

an employee. We are forced to the conclusion that plaintiff's testimony raised an issue of fact as to whether Gaines was Sears' employee. See Associated Indemnity Corp. v. Insurers Indemnity, Tex.Civ.App., 153 S. W.2d 533, 537, (reversed on other grounds, 139 Tex. 286, 162 S.W.2d 666); Halliburton v. Texas Indemnity Ins. Co., 147 Tex. 133, 213 S.W.2d 677, 680; Standard Insurance Co. v. McKee, 146 Tex. 183, 205 S.W.2d 362; Lloyds Guarantee Assurance v. Sheffield, Tex.Civ.App., 170 S.W.2d 327 (Writ Ref.); Consolidated Underwriters v. Lampkin, Tex. Civ.App., 323 S.W.2d 99, (Ref.N.R.E.); 23 Tex.Jur. 557. See also Graf v. Montgomery Ward & Company, 234 Minn. 485, 49 N.W.2d 797; Shaffer v. Brown, 32 N.J. Super. 413, 108 A.2d 476; Carlson v. Costello, (Sup.Ct.So.Dakota), 48 N.W.2d 825.

We have considered all other points. We think they are without merit and they are overruled. See United States Fidelity & Guaranty v. Hall, Tex.Civ.App., 224 S.W.2d 268, 271, (Writ Ref.). The judgment is reversed and the cause is remanded.