IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 05-0272
════════════
 
Entergy Gulf States, Inc., 
Petitioner,
 
v.
 
John Summers, 
Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Ninth District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 16, 
2008
 
 
            
Justice O’Neill, 
dissenting, joined by Chief Justice 
Jefferson and Justice Medina.
 
 
            
The Court today concludes that premises owners who pay (and 
recoup) their subcontractors’ workers’ compensation premiums are, and have 
always been, entitled to the Workers’ Compensation Act’s exclusive-remedy 
defense against their subcontractors’ injured employees. The Court pins its 
analysis on a 1917 provision that was designed to prevent “subscribers” from 
creating sham subcontractor relationships in order to avoid covering their own 
injured employees. Remarkably, neither the parties nor the dozens of amici curiae in this case have proffered such an 
interpretation. Although the Court concludes that the law in this regard has 
remained essentially the same since 1917, the Legislature first afforded a 
general contractor that “ha[d] contracted with another party to perform” work 
the right to voluntarily assume statutory employer status in 1983. Had all 
“subscribers” always been statutory employers of subcontractors’ employees, this 
statutory revision and its 1989 iteration would make no sense.
            
The parties and amici appear to agree, as do I 
and Justice Willett, that before 1989 premises owners 
were not “general contractors” under the Act. The appropriate inquiry, then, is 
not whether the 1989 “general contractor” definition excludes premises 
owners, as the Court posits, but whether the 
Legislature intended to change prior law by expanding the definition to 
include premises owners when it rewrote the Act in 1989 and expressly 
tethered the term to others commonly understood to mean a person who has 
contracted with an owner. Had the Legislature intended to change the law in 1989 
and for the first time afford premises owners the exclusive-remedy defense 
against subcontractors and their employees, it would surely have been simpler to 
say so by using the broader term “subscriber,” or by including the term “owner 
contractor” in the description of analogous terms that define a general 
contractor.
            
A few points bear noting at the outset. First, whether workers’ potential 
recovery is greater under the common law or the Workers’ Compensation Act, and 
whether one scheme promotes workplace safety over the other, is a legislative 
call, not ours. Second, one cannot contract into the Act’s protections if the 
Legislature did not intend to allow it; accordingly, that Entergy reserved any 
right it might have to assert a statutory-employer defense against IMC’s employees, or that Summers accepted workers’ 
compensation benefits paid for by Entergy (and deducted from the contract 
price), does not inform the statutory analysis. And finally, whether premises 
owners should be afforded the Act’s protections by paying their general 
contractor’s workers’ compensation premiums, as general contractors are by 
paying the premiums of their subcontractors, is a policy choice we are not at 
liberty to make.
            
As the Court notes, this case has drawn much attention since our initial 
opinion, and numerous amici have weighed in. When this 
case was first presented, Summers’ emphasis was on 
Entergy’s proof regarding the existence of a written agreement and mistaken 
reliance on the Legislature’s 1993 nonsubstantive 
recodification of the Labor Code. On rehearing, a more 
focused analysis of the applicable statutory text convinces me that the 
Legislature, in rewriting the Act in 1989, did not intend to change the 
general-contractor definition to include premises owners; to the contrary, it 
tied the definition to terms commonly understood to mean a person who has 
contracted with an owner. It might well represent sound policy to allow premises 
owners to become statutory employers of their contractors’ employees by 
providing workers’ compensation coverage, potentially expanding the number of 
employees eligible to receive benefits under the Act.[1] Whether such an expansion would require 
an adjustment to premiums, benefits, or other provisions of the Act is something 
only policymakers can decide. Our job is to discern what the Legislature 
intended. And that body has restricted the option to parties analogous to 
“principal contractor[s],” “original contractor[s],” and “prime contractor[s],” 
entities that contract to perform work for third parties and who face no 
premises liability in the absence of control of the premises. Based on the 
statute’s language and appropriate statutory construction principles, I do not 
agree that the Legislature intended the term “general contractor” to encompass 
premises owners within the Act’s protections. Accordingly, I respectfully 
dissent.
I.
A. 
The Statutory Text
            
Under section 406.123 of the Act, “a general contractor and a 
subcontractor may enter into a written agreement under which the general 
contractor provides workers’ compensation insurance coverage to the 
subcontractor and the employees of the subcontractor.” Tex. Lab. Code § 
406.123(a). If such an agreement is reached and properly 
filed, the general contractor may deduct premiums from the amount owed the 
subcontractor without incurring penalties under section 415.006 of the Act, 
which prohibits employers from collecting premiums or benefits from their 
employees.[2] Id. § 406.123(d), (f). More importantly, the agreement makes the 
general contractor the statutory employer[3] of the subcontractor and the 
subcontractor’s employees, shielded from tort liability by the Act’s 
exclusive-remedy provision. Id. §§ 
406.123(e), 408.001(a). The Act defines a general contractor as
 
a person who undertakes to procure the performance of work or 
a service, either separately or through the use of subcontractors. The term 
includes a “principal contractor,” “original contractor,” “prime contractor,” or 
other analogous term. The term does not include a motor carrier that provides a 
transportation service through the use of an owner operator.
 
Id. § 
406.121(1). A subcontractor, in turn, is “a person who contracts with a 
general contractor to perform all or part of the work or services that the 
general contractor has undertaken to perform.” Id. § 406.121(5). A close analysis of these definitions, 
particularly viewed in light of controlling statutory construction 
principles, compels the conclusion that the Legislature did not intend to 
allow a premises owner to assume general-contractor status and assert the Act’s 
exclusive-remedy defense against subcontractors and their employees at no 
additional cost to itself.
            
In construing a statute, our overarching purpose is to determine and 
effectuate the Legislature’s intent. State v. Shumake, 199 S.W.3d 279, 284 (Tex. 2006) (citing City of San Antonio v. City of 
Boerne, 111 S.W.3d 22, 25 (Tex. 2003)). The surest guide to that intent 
is, of course, the plain and common meaning of the language the Legislature has 
employed. City of Houston v. Clark, 197 S.W.3d 314, 318 (Tex. 2006) (citing McIntyre v. Ramirez, 109 S.W.3d 
741, 745 (Tex. 
2003)). Treating premises owners who provide workers’ compensation coverage to 
subcontractors and their employees as “general contractors” is inconsistent with 
the common meaning associated with the terms to which the definition is 
tied.
            
Throughout Texas statutory and common law, a contractor 
is generally understood to be a person or entity that enters into a contract 
with another for compensation. In interpreting the Act and its predecessors, we 
have for decades defined a contractor as “‘any person who, in the pursuit of an 
independent business, undertakes to do a specific piece of work for other 
persons . . . .’” Indus. Indem. Exch. v. 
Southard, 160 S.W.2d 905, 907 (Tex. 1942) 
(quoting Shannon v. W. Indem. Co., 257 S.W. 
522, 524 (Tex. Comm’n App. 1924, judgm’t adopted)) (emphasis added).[4] While the precise issue before us in 
Shannon was whether a party seeking workers’ compensation benefits was an 
independent contractor as opposed to an employee, we articulated a 
broader principle, i.e., that a contractor is someone who performs work 
for someone else. Our Legislature has repeatedly echoed that understanding. 
See, e.g., Tex. Prop. Code § 28.001(1) (“‘Contractor’ means a person who 
contracts with an owner . . . .”); Tex. Prop. Code § 53.001(7) (“‘Original 
contractor’ means a person contracting with an owner . . . .”); 
Tex. Elec. Code § 274.022(d) (“‘[C]ontractor’ means a newspaper or statewide association with 
which the secretary of state contracts under this section.”); Tex. Educ. Code § 51.776(3) (“‘[C]ontractor’ in the context of a contract for the 
construction, rehabilitation, alteration, or repair of a facility means . . . 
[a] legal entity that assumes the risk for constructing, rehabilitating, 
altering, or repairing all or part of the facility at the contracted price.”); 
Tex. Gov’t Code § 2166.2511(2) 
(“‘Contractor’ in the context of a contract for a project means a . . . legal 
entity that assumes the risk for constructing, rehabilitating, altering, or 
repairing all or part of the project at the contracted price.”).
            
The illustrative language the Legislature included in the Workers’ 
Compensation Act’s “general contractor” definition is consistent with that 
general understanding: “principal contractor,” “original contractor,” and “prime 
contractor” are all terms that envision a tripartite relationship in which one 
entity enters into a contract to perform work for another and then retains 
subcontractors or independent contractors to do all or part of the work. See, e.g., Tex. Prop. Code § 53.001(7), (13) 
(“‘Original contractor’ means a person contracting with an owner either directly 
or through the owner’s agent,” and “‘[s]ubcontractor’ 
means a person who has furnished labor or materials to fulfill an obligation to 
an original contractor or to a subcontractor to perform all or part of the work 
required by an original contract.”); Interstate Contracting Corp. v. 
City of Dallas, 135 S.W.3d 605, 611–12 (Tex. 2004) (using the term “prime 
contractor” interchangeably with “general contractor” in discussing pass-through 
claims); Page v. Structural Wood Components, Inc., 102 S.W.3d 720, 721–22 
(Tex. 2003) (using the term “general contractor” interchangeably with “original 
contractor” in interpreting chapter 53 of the Property Code);[5] see also Op. Tex. Att’y Gen. No. DM-300 (1994) (ruling that university that 
hired independent contractors to provide work such as carpet installation and 
window repair did not act as a “hiring contractor” under section 406.141 of the 
Act because it did “not act even as a ‘contractor’ as that term is commonly 
understood,” relying in part on section 406.121(1)’s general-contractor 
definition). While I acknowledge that the categories listed in the second 
sentence of section 406.121(1)’s “general contractor” definition are not 
exhaustive, the Legislature did make clear that only analogous entities 
are to be treated as general contractors. See Tex. Lab. Code § 
406.121(1). A premises owner is simply not analogous.[6]
            
The Court insists that the statutory definition controls over what it 
tacitly acknowledges is the commonly understood meaning of the term “general 
contractor.” But the Legislature itself has mandated that “[w]ords and phrases shall be . . . construed according to . . . 
common usage,” and that “[w]ords and phrases that have 
acquired a technical or particular meaning, whether by legislative definition or 
otherwise, shall be construed accordingly.” Tex. Gov’t Code § 311.011(a), (b). In this 
instance, common usage, the common law, and a host of legislative pronouncements 
are contrary to the meaning the Court attaches to the term. More importantly, 
the statutory language itself comports with, and is tied to, the general 
understanding of the term’s meaning. When the Legislature enacted section 
406.121, we had long defined a contractor as one who “‘undertakes to do a 
specific piece of work for other persons . . . .’” Southard, 160 
S.W.2d at 907 (quoting Shannon, 257 S.W. at 524 
(emphasis added). And Black’s Law Dictionary, at the time the Legislature 
adopted the general-contractor definition, similarly defined a contractor as “a 
person who, in the pursuit of any independent business, undertakes to do a 
specific piece of work for other persons . . . .” Black’s Law Dictionary 295 (5th ed. 
1979). It also stated that “[t]his term is strictly applicable to any person who 
enters into a contract, but is commonly reserved to designate one who, for a 
fixed price . . . undertakes to procure the performance of works or 
services . . . for the public or a company or individual.” Id. (emphasis 
added). In other words, a contractor is someone who receives payment for 
performing work for another. Section 406.121(1) precisely tracks these 
definitions by describing a general contractor as one who “undertakes to procure 
the performance of work or a service, either separately or through the use of 
subcontractors.” Tex. Lab. Code § 406.121(1). In light of 
this longstanding commonly understood usage, the Legislature could easily have 
defined “general contractor” to include premises owners if that was its intent, 
but it did not. Had the Legislature intended the term to be as conceptually 
broad as the Court and Justice Hecht today say it is, it could simply have 
written that “a subscriber and a subcontractor may enter into an agreement,” but 
again, it did not.
            
The Court attaches a similarly strained meaning to the term “separately” 
within the general-contractor definition. (“‘General contractor’ means a person 
who undertakes to procure the performance of work or a service, either 
separately or through the use of subcontractors.”) Id. That is, the 
Court says that a premises owner acts “separately” when it engages 
subcontractors directly rather than through a general contractor. ___ S.W.3d at ___. But “separately” far likelier alludes to 
independent contractors, as opposed to subcontractors, terms which the 
Legislature defined differently in the same bill that introduced the 
“separately” language. See Act of Dec. 12, 1989, 71st Leg., 2d C.S., 
ch. 1, § 3.05, 1989 Tex. Gen. Laws 1, 15 (codified at 
Tex. Lab. Code § 
406.121(2)).
B. 
The Statutory Revision
            
Significantly, the Legislature used almost identical “undertake to 
procure” language in the prior version of the statute when conferring 
statutory-employer status on prime contractors who provided workers’ 
compensation coverage to their subcontractors. Act of May 28, 1983, 68th Leg., 
R.S., ch. 950, § 1, 1983 Tex. Gen. Laws 5210, 5210, 
amended by Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 3.05(a)(5), 1989 Tex. Gen. Laws 1, 15. The prior 
statute equated the term “prime contractor” with “general contractor,” and 
defined it to mean “the person who has undertaken to procure the performance of 
work or services.” Id. The definition of “subcontractor” 
in the same legislation left no doubt that the language embraced the commonly 
understood meaning of a contractor as one who has agreed with another to perform 
work or services in exchange for compensation. “[S]ub-contractor” was defined as a person who has contracted to 
perform all or part of work or services that “a prime contractor has 
contracted with another party to perform.” Id. (emphasis added). Despite 
the clarity of that language, the Court and Justice Hecht conclude that the 1983 
general-contractor definition could be read to encompass premises owners who 
have not contracted with other persons to perform work. Apparently, they believe 
only third-party language within the general-contractor definition itself would 
demonstrate legislative intent to exclude premises owners.
            
Justice Willett, and the Court to some extent, make much of the Legislature’s omission in 1989 of the 
third-party language, concluding that the Legislature meant to abolish the 
“‘upstream contract’ condition.” It is hard to fathom that such a sweeping and 
deliberate change in the law would be so subtly effected. But if that had been 
the Legislature’s intent, it would not have substituted “undertaken to perform” 
language that had long been recognized in the general-contractor definition as 
imposing a third-party obligation. The Legislature’s use of the same language in 
the old and new general-contractor definitions strongly indicates it intended 
the same meaning in each version.
            
Reliance on omission of the third-party language in the subcontractor 
definition is misplaced for yet another reason. It is true that the Legislature 
is presumed to act with knowledge of existing laws, Acker v. Tex. Water Comm’n, 790 S.W.2d 299, 301 (Tex. 1990), and that 
deletions in existing laws are presumed to be intentional. In re Ament, 890 S.W.2d 39, 42 
(Tex. 
1994). But the 321-page workers’ compensation bill enacted in 1989 did 
not merely amend prior laws, it massively overhauled 
the entire workers’ compensation scheme. While portions of the bill amending the 
Insurance Code, the Government Code, and other measures related to workers’ 
compensation indicated deletions with bracketed strikeouts, articles 1 through 
11 of the bill comprising the Workers’ Compensation Act itself contained no such 
indications of omissions. See Tex. S.B. 1, art. 1-11, 71st 
Leg., 2d C.S. (1989) (codified as amended at Tex. Lab. Code, 
Title 5, Subtitle A); see also Tex. Legislative Council Drafting Manual 
35–36 (2008), available at http://www.tlc.state.tx.us/legal/dm/draftingmanual.pdf,. 
Thus, omission of the third-party language from the subcontractor definition 
does not merit the weight the Court and Justice Willett afford it. Because 
“contract[ing] with another party” is inherent in the 
nature of general contractors and analogous terms, and because the concept had 
been subsumed in the definition of “prime contractor” and “general contractor” 
as “the person who has undertaken to procure the performance of work or 
services,” the third-party language in the subcontractor definition was most 
likely not included in the new Act to conform the two definitions.
            
Giving virtually no effect to the Legislature’s restriction of “general 
contractor” to terms analogous to “principal contractor,” “original contractor,” 
and “prime contractor,” the Court and Justice Willett attach great significance 
to the sentence excluding motor carriers that provide transportation services 
through the use of owner-operators. But when that exclusion is viewed in the 
context of the entire statutory scheme and other law applicable to motor 
carriers, the reason for the exclusion becomes clear: in the 1989 rewrite of the 
Act, the Legislature made some, but not all, of section 406.123 applicable to 
motor carriers. Like general contractors and subcontractors, motor carriers and 
owner-operators (which are deemed independent contractors under section 
406.121(4)) may enter into an agreement under which the motor carrier provides 
workers’ compensation coverage to an owner-operator and its employees. Tex. Lab. Code § 
406.123(c). And like a general contractor, a motor carrier 
that provides workers’ compensation coverage to its independent contractor may 
deduct the premium from the contract price without incurring penalties under 
section 415.006 of the Act. Id. § 
406.123(d). But unlike general contractors, a motor carrier that provides 
coverage to its independent-contractor owner-operator does not become the 
statutory employer of the owner-operator or the owner-operator’s employees — 
there is no provision equivalent to section 406.123(d) that applies to motor 
carriers. This differing treatment of motor carriers is consistent with section 
5.001(a)(2) of the Transportation Code, which restricts 
the ability of common carriers to limit their common law liability. It may also 
be attributable to the heightened standard of care imposed upon common carriers 
in light of their potential impact on public safety and their highly regulated 
status. See Speed Boat Leasing, Inc. v. Elmer, 
124 S.W.3d 210, 212 (Tex. 2003); S. States 
Transp., Inc. v. State, 774 S.W.2d 639, 642 
(Tex. 1989) 
(Gonzalez, J., 
dissenting). One could argue that motor carriers are analogous to general 
contractors, in that they frequently contract with third parties to provide 
transportation services and then subcontract with owner-operators to actually 
perform those services. Thus, the Legislature likely expressly excluded motor 
carriers from the general-contractor definition to make it clear that, even 
though they might otherwise fit the general-contractor construct, they are to be 
treated differently.
C. 
Justice Hecht’s Policy-Based Interpretation
            
Noting that a property owner may act as its own general 
contractor, but acknowledging that the term is more generally understood to mean 
one who contracts with a property owner and then subcontracts parts of the job 
to others, Justice Hecht concludes that we just can’t tell from the statutory 
language what the Legislature meant. Finding the text elusive, Justice Hecht 
discerns “policies embedded in the Act” which he believes tip the scales in 
favor of treating a premises owner as a general contractor. There are several 
problems with this approach. First, while the definition of a 
“general contractor” as one who “undertakes to procure the performance of work” 
may in isolation appear open-ended, the definition’s second sentence ties the 
term to its commonly understood meaning. Second, if indeed the text is 
ambiguous as Justice Hecht claims, we have clearly said that statutes in 
derogation of common law rights should not be “‘applied to cases not clearly 
within [their] purview.’” See Energy Serv. Co. of 
Bowie, Inc. v. Superior Snubbing Servs., Inc., 236 
S.W.3d 190, 194 n.17 (Tex. 2007) (quoting 
Satterfield v. Satterfield, 448 S.W.2d 456, 459 (Tex. 1969)). And 
third, the “policies” that Justice Hecht identifies and perceives would be 
thwarted if premises owners are not treated as general contractors have never 
been applied in this context and beg a question that is exclusively within the 
Legislature’s realm, not ours.
            
The first policy that Justice Hecht believes sweeps premises owners into 
the general-contractor definition is the Act’s “decided bias” for coverage. 
See Wingfoot Enters. v. Alvarado, 111 S.W.3d 
134, 140 (Tex. 
2003). But the Act’s bias is in favor of employers electing to provide coverage 
for their employees; we have never read a bias into the Act that would confer 
its protections on third parties absent clear statutory authorization or any 
indicia of an employer/employee relationship. The Act’s general policy that 
favors employers covering employees cannot expand the category of persons 
considered “general contractors” beyond the statutory definition; invoking that 
policy here is particularly unwarranted when the Legislature could so easily 
have defined the term as expansively as the Court and Justice Hecht do 
today.
            
The second policy Justice Hecht cites is the sham-subcontractor 
provision. See Tex. Lab. Code § 406.124. If the Act 
prohibits subscribers from utilizing subcontractors to avoid coverage, he 
posits, it surely would not discourage coverage by denying subscribers the 
exclusive-remedy defense. But the sham-contractor provision was never intended 
to impute coverage to true third parties as Justice Hecht seems to imply; it 
simply prohibits a person who has workers’ compensation coverage from 
subcontracting the work with the intent and purpose of avoiding liability as an 
employer. See id. In other words, an employer cannot designate its 
employee a subcontractor in order to avoid paying benefits under the Act. No one 
claims that IMC was hired by Entergy as a sham to avoid paying its own employees 
workers compensation benefits; the provision is simply irrelevant to analysis of 
the general-contractor definition.
            
Justice Hecht next charges that my reading of the statute would have 
“perverse” results because the contractual indemnity allowed under section 
417.004 and provided for in Entergy’s contract with IMC would permit Summers to recover common law damages from Entergy, which 
Entergy could in turn recoup from IMC. Justice Hecht suggests that in such a 
scenario, “the workers’ compensation system provides nothing to any employer.” 
Of course the pre-1989 Act, at least according to my reading (and that of the 
litigants, amici and Justice Willett), had the same 
effect, which is a policy choice the Legislature made. The question is whether 
in 1989 the Legislature intended to change that policy. In addition, several 
factors undermine Justice Hecht’s point. One, while Entergy paid IMC’s premiums for Summers’ benefits under its 
owner-provided insurance plan (OPIP), that cost was deducted from the contract 
price paid to IMC, so Entergy effectively paid nothing for the additional 
protection Justice Hecht’s reading would afford Entergy. Two, owners receive 
significant economic benefits from OPIPs like 
Entergy’s apart from tort immunity. OPIPs allow owners 
to secure coverage for all their contractors at a lower overall price than the 
cost of workers’ compensation insurance that subcontractors would normally 
incorporate into their contract prices, thereby lowering owners’ overall costs. 
Howrey LLP, Owner Controlled Insurance Programs 
(OCIPs): Why Owners Like Them 
and Why Contractors May Not, Construction Web Links, July 14, 2003, 
http://www.constructionweblinks.com/Resources/Industry_Reports__Newsletters/July_14_2003/ocip.htm. 
In turn, the cost of the premium deducted from IMC’s 
contract price was likely lower than the premium IMC would have otherwise paid. 
Consequently, both Entergy and IMC benefitted from the 
insurance arrangement in this instance irrespective of tort immunity. Three, 
that indemnity agreements like that between Entergy and IMC are widespread in 
the industry is some indication that premises owners do not perceive the Act’s 
statutory-employer provision to protect them from common law claims, else there 
would be no need for such agreements. And four, any tort damages that Summers 
might recover would likely be paid from the commercial general liability policy 
that Entergy required IMC to obtain as a condition under the parties’ contract, 
and the workers’ compensation carrier would be subrogated to Summers’ recovery 
under section 417.001 of the Act. The “perverse result” that Justice Hecht 
envisions simply does not exist.
            
The fourth policy reason Justice Hecht cites is that the Act was intended 
to be comprehensive. But again, it can only be comprehensive to the extent that 
the Legislature intended, and there is nothing in the 1989 revision that would 
indicate the Legislature’s intent suddenly changed. Underlying Justice Hecht’s 
analysis is an apparent assumption that Summers might 
recover a windfall against Entergy on his common law claims. But if Entergy is 
not Summers’ employer under the Act, it retains the 
full panoply of defenses available to it under the common law, and Summers 
shoulders the burden of establishing the company’s negligence with the 
consequent uncertainties of litigation. Should Summers 
prevail on his common law claims, which is far from certain, he would forfeit 
any benefits that he has received under the Act. Irrespective of the workers’ 
compensation system’s relative merits, which is not ours to decide, it has 
operated this way at least until the statutory revision in 1989; there is 
nothing to indicate the Legislature’s revision was intended to effect a 
change.
D. 
Statutory Construction Principles
            
As I read the statutory language, it seems clear that the Legislature did 
not intend to transform premises owners who contract for third-party services 
into general contractors entitled to assert the Act’s exclusive-remedy defense. 
But even if the language were less than clear, well-established statutory 
construction principles lead to the same conclusion. In a decision issued a week 
before the Court’s original opinion in this case, we considered whether an 
indemnification agreement between a subscribing employer and another party could 
be enforced by that party’s contractor even though the contractor had not 
executed the agreement. Superior Snubbing, 236 S.W.3d 190. The statute had formerly required only that 
such an agreement be “‘executed by the subscriber’” to be enforceable, but in 
1989 the Legislature changed the statutory language to require a written 
agreement “‘executed . . . with the third party.’” Id. at 191 
(quoting Tex. Lab. Code § 
417.004). Although the revision appeared to require the 
signature of both parties, we concluded that the Legislature intended no change 
in the law and that the nonsignatory contractor could 
seek indemnification as an intended beneficiary of the agreement. Id. at 
195. In concluding that the Legislature intended no substantive change in 
the law, despite the change in the statute’s language, we relied largely on two 
statutory construction principles. First, we noted that the common law
class=Section2>
allows the intended beneficiary of a contract to enforce it, 
and that statutes in derogation of common law rights “‘will not be extended 
beyond [their] plain meaning or applied to cases not clearly within [their] 
purview.’” Id. at 194 n.17 
(quoting Satterfield, 448 S.W.2d at 459). Second, we applied the 
Legislature’s directive that in interpreting a statute, courts must “‘consider 
at all times the old law, the evil, and the remedy.’” Id. (quoting 
Tex. Gov’t Code § 312.005). Because we could 
identify no practical motivation for a change, or any extra-textual indication 
that the Legislature’s amendment of the statute was intended to be substantive, 
we concluded that the third-party beneficiary could seek indemnity. Id. at 
195.
            
The application of those same principles in this case demonstrates that 
the Legislature did not intend to expand the class of contractors entitled to 
claim statutory-employer status to include premises owners when it rewrote the 
Act in 1989. Nothing in the Act’s legislative history suggests that the 
Legislature perceived an “evil” in the then-existing requirement that a person 
must have contracted to perform services for another to be a general or prime 
contractor. See Joint Select Committee on Workers’ Compensation 
Insurance, A Report to the 71st Legislature (1988); Tex. Workers’ 
Comp. Comm’n v. Garcia, 893 S.W.2d 504, 512– 13 
(Tex. 1995) (discussing report). And to the extent the statute’s language does 
not plainly entitle premises owners to assume statutory-employer status under 
these circumstances, Superior Snubbing counsels against that 
construction, as it would be in derogation of Summers’ 
common law rights. 236 S.W.3d at 194 n.17; see also Kroger Co. v. Keng, 23 S.W.3d 347, 349 (Tex. 2000) (“[I]t would be 
injudicious to construe the statute in a manner that supplies by implication 
restrictions on an employee’s rights that are not found in section 406.033’s 
plain language.”) (citing Miears v. Indus. Accident Bd., 232 S.W.2d 671, 
675 (Tex. 
1950)).
            
The Court may perceive that it has managed to blur the inconsistency 
between its decision today and Superior Snubbing by proclaiming that the 
law has remained unchanged since 1917. ___ S.W.3d at 
___. But its own analysis shows how hollow that statement is. The Court 
acknowledges that an entirely new provision was introduced in 1983, and then 
amended in 1989. And the Court attaches some significance to the omission of the 
phrase “with another party” from the subcontractor definition in 1989. ___ S.W.3d at ___. In Superior Snubbing, the Court 
concluded that the Legislature’s insertion of a phrase failed to 
demonstrate legislative intent to change the law absent a showing of any 
specific motivation. Here, the record is similarly devoid of any showing of an 
“evil” in need of remedy, yet the Court concludes that the omission of 
the “with another party” language effected a sweeping change in the law.
            
Justice Hecht recognizes the tension between today’s decision and 
Superior Snubbing, but brushes it aside because “it has never been clear 
when a person is considered the statutory employer of a subcontractor or his 
employees . . . .”[7] He reaches that conclusion by focusing on 
a series of failed bills — all of which ultimately made clear that a general or 
prime contractor is someone who has agreed to perform work for a third party — 
and the fact that the 1983 legislative forerunner to the sections at issue today 
originated in a bill that would have eliminated the sham-subcontractor provision 
of the Act. Following this circuitous route, Justice Hecht concludes that “the 
definition of ‘prime contractor’ finally enacted could reasonably be read to 
include a premises owner acting as his own general contractor.” ___ S.W.3d at ___. That view (voiced by none of the litigants 
or amici) is simply contrary to the statute’s terms; 
before 1989, the subcontractor definition made it unmistakably clear that a 
general contractor was someone who had “contracted with another party to perform 
work.” Act of May 28, 1983, 68th Leg., R.S., ch. 950, 
§ 1, 1983 Tex. Gen. Laws 5210, 5210, amended by Act of Dec. 12, 1989, 
71st Leg., 2d C.S., ch. 1, § 3.05(a)(5), 1989 Tex. 
Gen. Laws 1, 15. Moreover, to the extent Justice Hecht’s interpretation of the 
Act is informed bills that were never adopted by both houses of the Legislature, 
it is worth noting that the House committee substitute for Senate Bill 1, the 
source of sections 406.121 and 406.123, would have specifically allowed premises 
owners to secure statutory-employer status, but that version of the bill was 
rejected in its entirety by the Senate. See H.J. of Tex., 71st Leg., 1st C.S. 76 (1989). In any event, I agree with Justice 
Willett that failed legislation is an unsound guide to legislative intent.
            
The Court’s conclusion that premises owners are subsumed within the 
general-contractor definition is also inconsistent with another statutory 
construction principle we have frequently employed. Just four months ago, we 
analyzed section 101.022(b) of the Texas Civil Practice and Remedies Code to 
determine whether loose gravel on a road amounted to a special defect. 
Tex. Dep’t of Transp. v. York, ____ S.W.3d ____ (Tex. 2008). The statute we evaluated 
imposed a heightened duty on governmental units to warn of special defects “such 
as excavations or obstructions on highways, roads, or streets” of which they 
should have been aware. Tex. Civ. Prac. 
& Rem. Code § 
101.022(b). We explained that while the statute did not 
define “special defect,” it did give examples:
 
Thus, 
“[u]nder the ejusdem generis rule, we are to construe ‘special defect’ to include 
those defects of the same kind or class as [excavations or obstructions].” . . . 
While these specific examples “are not exclusive and do not exhaust the class,” 
the central inquiry is whether the condition is of the same kind or falls within 
the same class as an excavation or obstruction.
 
York, ___ 
S.W.3d at ___. Because loose gravel did not share the characteristics of 
an obstruction or excavation, we held that it was not a special defect. 
Id. at 
___. The application of York’s principles in this case 
demonstrates that the Legislature did not intend to include premises owners 
within the Act’s general-contractor definition. As already explained, a premises 
owner who is not performing work for another does not share the characteristics 
of a general contractor, a principal contractor, an original contractor, or a 
prime contractor. See also U.S. Fid. & Guar. Co. v. Goudeau, ___ S.W.3d ___, ___ (Tex. 2008) (“Under the 
traditional canon of construction noscitur a 
sociis (‘a word is known by the company it 
keeps’), each of the words here must be construed in context.”).
            
In support of its construction, the Court posits two workers injured in 
the same industrial accident receiving different compensation. The Court 
apparently considers it anomalous that a worker employed by the premises owner 
working side-by-side with a subcontractor’s employee might be limited to 
workers’ compensation benefits, while another employed by an independent 
contractor would be able to seek the full range of damages under the common law. 
First, to the extent such an anomaly exists under my reading of the statute, it 
is the result of policy choices made by the Legislature that long pre-existed 
the 1989 revision. Moreover, in implying that the result is somehow unfair to 
the premises owner’s injured employee, the Court overlooks the option the Act 
provides employees of subscribing employers to elect not to be covered by 
workers’ compensation. Tex. Lab. Code § 406.034. It also overlooks 
the quid pro quo, being the relinquishment of uncertain common law recovery in 
exchange for the prompt receipt of defined benefits, 
that has insulated the Act from constitutional challenge under the Open 
Courts provision of the Texas Constitution. Garcia, 893 
S.W.2d at 521.
II.
            
Because I do not believe that the Legislature in the 1989 Act intended to 
change prior law and confer statutory-employers status on premises owners, I 
respectfully dissent.
 
 
            
            
            
            
            
            
___________________________________
            
            
            
            
            
            
Harriet O’Neill
            
            
            
            
            
            
Justice
 
OPINION 
DELIVERED: April 3, 2009






[1] 
Interestingly, Entergy’s agreement to provide coverage for IMC’s employees swept no additional employees into the 
workers’ compensation system in this case. Before it was amended, the contract 
between Entergy and IMC required IMC to provide workers’ compensation coverage 
for IMC employees. The availability of this type of contractual arrangement, 
coupled with contractual indemnity provisions, may explain the dearth of case 
law arising under section 406.123(a).

[2] 
The Court insists that Entergy “paid for” workers’ compensation insurance 
covering IMC’s employees. ___ S.W.3d 
at ___. It may be technically true that Entergy directly paid the 
insurance premiums, but it is undisputed that Entergy procured the insurance in 
exchange for a reduction in the cost of its contract. Thus, under the Court’s 
construct, Entergy bought immunity from suit at no additional cost to 
itself.

[3] 
The Act does not use that term, but I use it for ease of reference. Under the 
Act, “[a]n agreement under [section 406.123] makes the general contractor the 
employer of the subcontractor and the subcontractor’s employees only for 
purposes of the workers’ compensation laws of this state.” Tex. Lab. Code § 
406.123(e).

[4] 
Both the Court and Justice Willett recite the principle that we do not apply the 
ordinary meaning of a term if the Legislature has adopted a specialized 
definition, then promptly cast it aside by looking to 
the ordinary meaning of the words the Legislature used within the “general 
contractor” definition. This is necessary, of course, because we cannot 
determine whether a premises owner is “analogous” to the types of contractors 
listed in section 406.121(1) or what “undertakes to procure” means without 
examining how those terms are commonly understood.

[5] 
While attaching some significance to a string of inapposite out-of-state cases, 
Justice Willett gives these examples no weight because some of them discuss a 
party’s status as a “contractor” or an “independent contractor,” rather than a 
“general contractor.” But the person or entity at issue must first be a 
contractor before being further classified as an independent contractor, a 
subcontractor, or a general contractor. Moreover, several of these examples 
define terms that the Legislature has expressly deemed analogous to “general 
contractor” in section 406.121(1), including “original contractor” and “prime 
contractor.”

[6] 
The commonly understood difference between general contractors and premises 
owners may explain why Entergy failed to raise the statutory-employer defense 
until nearly two years after the suit was initially filed. Even then, the 
defense was the last of the ten defenses Entergy raised, after contributory 
negligence, failure to mitigate damages, and several others.

[7] 
The sham contractor provision, now codified as section 406.124 of the Labor 
Code, the only source of statutory -employer status prior to 1983, appears to 
have been the subject of only eight cases since its enactment in 1917. See 
Hatfield v. Anthony Forest Prods. Co., 642 F.2d 175 (5th 
Cir. 1981); Turnbough v. United Pac. Ins. 
Co., 666 S.W.2d 489 (Tex. 1984); All-Tex Roofing, Inc. v. Greenwood Ins. 
Group, Inc., 73 S.W.3d 412 (Tex. App.—Houston [1st Dist.] 2002, pet. 
denied); Commercial Standard Ins. Co. v. White, 423 S.W.2d 427 (Tex. 
Civ. App.—Amarillo 1967, writ ref’d n.r.e.); Houston Fire 
& Cas. Ins. Co. v. Farm Air 
Serv., Inc., 325 
S.W.2d 860 (Tex. Civ. App.—Austin 1959, writ ref’d n.r.e.); Tex. 
Employers’ Ins. Ass’n v. Harper, 249 S.W.2d 677 (Tex. Civ. 
App.—Dallas 1952, writ ref’d n.r.e.); U.S. Fid. & Guar. Co. v. Hall, 224 S.W.2d 
268 (Tex. Civ. App.—Austin 1949, writ dism’d); Fort Worth Lloyds v. Mills, 213 S.W.2d 565 (Tex. Civ. 
App.—Galveston 1948, writ ref’d n.r.e.).